492 S.E.2d 86

Julianne Blakeley THORNTON, Respondent,

v.

Kenneth W. THORNTON, Jr., Appellant.

No. 24698.

Supreme Court of South Carolina.

Heard Dec. 4, 1996.

Decided Oct. 13, 1997.

H. Asby Fulmer, III, of Lewis, Roger & Lark, P.A., Columbia, for appellant.

James T. McLaren, C. Dixon Lee, III, of McLaren & Lee, Jan L. Warner, Columbia, for respondent.

TOAL, Justice:

This is a consolidated case involving three separate appeals of various orders concerning alimony and child support. Appellant Ken Thornton ("Husband") appeals the family court's orders increasing his alimony and child support obligations, ordering him to pay arrearages with interest or transfer real property he owns, and finding him in contempt of court. We affirm in part, reverse in part, and vacate in part. We remand the case for redetermination of attorneys' fees.

### FACTUAL/PROCEDURAL BACKGROUND

This case has a long and tortuous history. Each step of the litigation between the parties has been marked by Husband's attempts to hide his assets, obfuscate issues, deceive the courts of this state and thwart the aims of justice. An abbreviated history of the litigation between the parties is as follows:

Husband and Respondent Julianne Thornton ("Wife") were married in 1968 and remained married for approximately twelve years. At the time of the marriage, Wife was a schoolteacher, and Husband was in law school. During Husband's time in law school, Wife was Husband's primary means of financial support. After Husband completed law school, the couple settled in Georgetown County, where Husband established a successful law practice. During the marriage, the couple purchased a home and numerous rental properties.

Five children were born of the marriage, an older daughter followed by quadruplets ("Children") who were born in 1976. The physical stress of the quadruplet birth exacted a considerable toll on Wife's health. She continues to suffer the effects of giving birth to the quadruplets.

In 1980, Husband left Wife and Children. He admitted engaging in several acts of adultery beginning in 1979. Husband and Wife divorced by decree dated March 17, 1982. The action was brought and heard in Sumter County Family Court in the Third Judicial Circuit following the recusal of all family court judges in the parties' home county of Georgetown in the Fifteenth Judicial Circuit. The ground for the divorce was Husband's adultery.

In the final divorce decree, the family court made several findings concerning Husband's income and standard of living. First, it found Husband was "a very successful lawyer with a good practice earning ... up to approximately $106,000 per year reported taxable income from his law practice and outside activities." The order further stated that Husband owned and maintained horses, including a thoroughbred, and owned a fifty percent interest in a corporation that had as its sole asset a motor yacht. It stated Husband "has continued to enjoy an extremely high standard of living, and he enjoys an extremely active social life, at the same time he has protested his inability to pay *pendente lite* support for Children and [Wife]."

Most significant to the present actions, the divorce decree concluded Husband had failed to report all his income and had attempted to mislead the court regarding the extent of his wealth:

> The financial status of the husband is one of considerable wealth although his financial declaration filed with the Court attempted to make the Court believe otherwise. The latest financial declaration showed a negative gross income, a condition which cannot exist. [Husband] attempted to deduct income taxes from his financial declaration without crediting himself with the income which was responsible for the taxation. This cannot be allowed. *[Husband's] financial declaration was so beclouded that it was virtually useless in helping the Court determine his monthly income.*

(emphasis added). Based on its findings concerning Husband's income and standard of living, the family court ordered Husband to pay Wife $800 per month in alimony and $350 per month per child in child support. The child support requirement extended through the children's "eighteenth (18th) birthday ... unless any child shall continue his or her education in an institution of higher learning." The quadruplets were six at the time of the divorce decree, and the decree noted that Wife was at home raising the children.

Thereafter, throughout the 1980's, the parties continued to litigate issues involving the transfer of property. Husband unsuccessfully attempted to change venue to Georgetown County. In 1987, this court reversed a trial court ruling transferring the case to the Fifteenth Circuit.

Wife was hospitalized in 1990 for chemical dependency. Much stress had filled her life in the years following the divorce. Hurricane Hugo heavily damaged her home in 1989. Her health had deteriorated. Her oldest daughter had been killed in a car accident. One day after Wife entered the hospital, Husband initiated an action in Georgetown County seeking a change of child custody and termination of his child support and alimony obligations. In bringing the action, Husband neither sought nor obtained an order transferring jurisdiction from the family court for the Third Judicial Circuit. Notwithstanding this Court's order conferring jurisdiction to the Sumter Family Court, an ex parte order was issued by the Georgetown Family court in that action on November 7, 1990, granting Husband the relief he sought.

While Wife continued to be hospitalized and unavailable for court proceedings, a series of orders were issued transferring custody to Husband, granting Wife visitation and terminating Husband's alimony and support obligations to Wife. She appeared in these proceedings through her mother as court appointed guardian ad litem. None of these orders were appealed.

After Wife was released from the hospital, she then brought the present action in 1991 in the Third Circuit. She sought an order declaring void for lack of jurisdiction the 1990 transfer of custody to Husband. She also sought custody of Children, arrearages in alimony and child support, increases in the

amount of alimony and child support, attorneys' fees, and a finding of contempt for Husband's failure to satisfy his alimony and child support obligations.

A number of orders were issued in this litigation. On July 30, 1991, an order was issued declaring void the order transferring custody to Husband and terminating Husband's alimony and child support obligations. On December 12, 1991, a *pendente lite* order was issued granting Wife custody of Children, awarding her child support and alimony, and ordering Husband to pay certain medical bills and other expenses associated with Children.[1]

On May 28, 1993, the family court found Husband in contempt of court for his failure to pay approximately $21,000 in arrearages for Children's medical care and automobile expenses. Husband had argued that he lacked the means to pay the arrearages because of difficulties with the Internal Revenue Service and the South Carolina Tax Commission.[2] The family court disagreed. It found that notwithstanding Husband's legal difficulties, Husband had ample means to satisfy the arrearages. The court noted that in October 1992, Husband and his current wife had received a $1,000,000 settlement from a lawsuit and that Husband's share totaled $350,000. The court also referred to Husband's "substantial" lifestyle and his ownership of several properties, including his lien free Georgetown office valued at $250,000 and a one-half interest in a Colorado vacation home worth approximately $600,000. The family court relied on these facts to conclude Husband had the ability to pay the arrearages and should, therefore, be held in contempt of court.

Notwithstanding his prior claims that he was "unable" to pay the arrearages, Husband promptly paid the $21,000 as soon as it became clear he would go to jail if he failed to pay.

On April 24, 1994, a final hearing was held to address Wife's request for increases in alimony and child support, to deter-

1. Although the December 12, 1991 order was modified, it later was fully reinstated.

2. Husband was convicted of federal income tax evasion. He had been indicted on several counts of underreporting his income to the federal government. Ultimately, he pled guilty to one count of the indictment.

mine Husband's alimony and child support arrearages, and to determine whether Husband should be held in contempt of court for his failure to pay alimony and child support. One of the primary issues litigated by the parties was Husband's ability to pay alimony and child support. Husband admitted he had failed to pay alimony and child support for a period of time, but claimed he had been and was unable to do so because of problems with the IRS and the South Carolina Tax Commission. He claimed that his tax problems had caused his previously thriving law practice to dwindle to practically nothing[3] and that his only source of income was $1500 per month paid to him by his current wife for help with her Amway business. He also admitted having received $350,000 from a lawsuit, but claimed all this money was (more or less) earmarked for the IRS. He further claimed that he had promised the IRS not to sell or otherwise encumber any real property he owned.

Notwithstanding Husband's claims of impoverishment and deprivation, there was ample testimony regarding Husband's lavish lifestyle. Among other things, Husband drove an expensive car, owned a Rolex, and possessed several valuable pieces of property, including the Colorado and Georgetown properties. There was evidence Husband traveled frequently. Wife attempted to establish at the hearing that Husband also had an interest in the Amway business. While the evidence of such an interest was rather limited, it did indicate that Husband contributed "sweat equity" to his current wife's extremely profitable Amway business and that he was capable of making substantial amounts of money in sales. As noted above, Husband received a large settlement in a lawsuit. He managed to pay thousands of dollars to various professionals, including lawyers and accountants, for assistance with tax and other matters.

Based on the testimony at the final hearing, the family court issued a final order in the matter on October 14, 1994 ("the October 14 order"). The October 14 order assessed arrearages and attorneys' fees against Husband, found Husband in

---

3. Husband was suspended from the practice of law for a period of time following his federal tax conviction.

contempt of court, and increased alimony and child support.[4] The order also restrained Husband from transferring or otherwise encumbering his property, which included a Georgetown office building (his law office) and a part interest in a six-bedroom home in Colorado, until he paid the arrearages in alimony and child support. The finding of contempt was based on the family court's conclusion that Husband had the ability and means to pay alimony and child support, but he was either concealing or refusing to use his assets or was willfully failing to obtain employment that would allow him to meet his obligations.

The order directed Husband's Georgetown office property, among other properties, to be used as security for payment of Husband's obligations. Title to the Georgetown office property was transferred to Wife when Husband failed to comply with the order. Husband's post-trial motions were denied in an order dated February 17, 1995.

After another hearing, the family court again found Husband in contempt of court. This contempt order ("May 23 contempt order") was based on Husband's failure to pay his alimony and child support arrearages from before and after entry of the October 14 order, as well as his transferring to his current wife his interest in proceeds from the sale of some property. At the hearing on the Rule to Show Cause why Husband should not be held in contempt of court, Wife presented evidence of a loan application submitted by Husband that showed a net worth substantially higher than what Husband had represented to the family court.[5] This document was admitted under the business records exception to

---

**4.** Alimony was increased to $1,500 per month, and child support was increased to $500 per month per child. The order provided that the child support continue "until such time as each child graduates from college."

At the hearing, there was considerable uncontroverted evidence of dramatic increases in the cost of raising Children. Children had increased expenses associated with medical care, hygiene, clothing, and education. Husband did not seriously challenge the increase in expenses, but claimed he was not liable for college expenses. The trial court concluded that the original divorce decree "fixed" the obligation for college expenses.

**5.** The loan application represented that Husband and his current wife have a net worth exceeding two million dollars.

the hearsay rule; it had been found in Husband's law office after title to the office was transferred to Wife. Other admitted documents showed that Husband had deposited substantial sums of money into his checking account.[6]

Yet another contempt order was issued September 1, 1995 ("September 1 contempt order"), and Husband's motion for reconsideration was denied by order dated November 30, 1995. The September 1 contempt order was based on Husband's transfer of the Colorado property and his false testimony in a previous hearing concerning the transfer of the Colorado property.

Husband appeals the orders on numerous grounds.

## LAW/ANALYSIS

### I. APPEAL FROM OCTOBER 14, 1994 ORDER & ORDER DENYING RECONSIDERATION

#### A. TRANSFER OF REAL PROPERTY

Husband argues the family court lacked the power to order a transfer of Husband's real property to satisfy his alimony and child support arrearages. We agree.

The October 14th order provides in pertinent part:

To secure Defendant–Father's obligation to pay the child support and alimony arrearages referenced above and to secure his compliance with his ongoing obligation to pay child support and alimony, and in the further event that Defendant–Father does not bring all arrearages current by October 31, 1994, as ordered above, then he shall transfer to Plaintiff–Mother, free of all liens and encumbrances, his Georgetown office building and land, free of all liens and encumbrances which shall then be sold and the proceeds applied to Defendant–Father's past due and future support obligations to Plaintiff–Mother and the children. In the event that he fails to do so, the Clerk of Court for Georgetown County, South Carolina is hereby authorized and

---

6. On October 17, 1994, a check in the amount of $25,272 was deposited into Husband's account. Other large checks were issued to Husband and his current wife, and Husband endorsed those checks to his current wife.

directed to transfer said property to Plaintiff–Mother, free and clear of all liens and encumbrances, pursuant to § 20–7–420(30), S.C.Code of Laws, 1976, as amended, and the property shall then be sold by Plaintiff–Mother and the proceeds applied to Defendant–Father's past due and future support obligations.

The Order contains a similar provision concerning the Colorado property. When Husband failed to pay these arrearages and failed to transfer the Georgetown property to Wife, the Clerk of Court for Georgetown County effected the transfer. Husband now asserts the family court lacked the power to order the transfer.

We reverse the family court's decision to transfer the Georgetown property to Wife and vacate the order effecting such transfer. Despite the fact that Husband cavalierly evaded his financial obligations and flouted court orders, the family court had no authority to transfer title to the Georgetown property to Wife as security for alimony and child support payments. We conclude that S.C.Code Ann. § 20–3–130(D) (1985), which authorizes the family court "to make provision for the security for the payment of the [alimony] support including, but not limited to, requiring the posting of money, property, and bonds" does not permit such direct transfers of property.[7] Instead, the family court's October 14 order had the effect of creating a lien on the Georgetown property. The order expressly stated that such property was to secure Husband's obligations to Wife. Since Husband has refused to meet his obligations, Wife may immediately foreclose the lien by following any execution procedures required by law. On remand, the family court will determine the

---

7. In the absence of a specific statutory provision, the authority to transfer title to real property for security may not be implied from a general statute authorizing a court to require security for alimony payments. An example of a jurisdiction that does permit such a transfer is North Carolina. Its relevant statutory provision states, "If the court requires the transfer of real or personal property or an interest therein as part of an order for alimony ... or for the securing thereof, the court may also enter an order which shall transfer title...." N.C.Gen.Stat. § 50–16.7(c) (1990); see Gilbert v. Gilbert, 71 N.C.App. 160, 321 S.E.2d 455 (1984) (holding that § 50–16.7(c) permits the transfer of title to real property if it is necessary to insure payment of alimony).

amount of arrearages and attorneys' fees. The proceeds of any foreclosure sale will go toward satisfying Husband's debts to Wife. If the sale price for the Georgetown property exceeds the amount of Husband's indebtedness, the remainder of the money shall be held in escrow in an account from which Wife can draw her monthly alimony until the fund is exhausted.

We also reverse the judgment of the family court transferring the Colorado property to Wife and vacate the order effecting such transfer. As noted above, the October 14 order had the effect of creating a lien on Husband's properties. This included his one-half interest of the Colorado property.[8] Consequently, Husband's new wife holds the property subject to the lien. Wife may enforce the lien pursuant Colorado law.

### B. CHILD SUPPORT OBLIGATION

Husband argues the family court erred in increasing his child support obligation. He contends the lower court should have reduced or terminated the support due to his inability to pay and because the children have reached majority. We disagree.

At the hearing, Wife presented evidence that expenses associated with the children had increased substantially. The family court agreed, ordering Husband to pay $500 per month per child for child support until the child graduated from college.

Generally under South Carolina law, a parent's obligation to pay child support extends only until the child reaches majority, then ends by operation of law. *See* S.C.Code Ann. § 20–7–420(17) (1985) (granting family court jurisdiction "[t]o make all orders for support . . . of a child . . . run until the child is eighteen years of age . . . or, where there are . . .

---

8. Generally, a court of one state cannot create a lien on property located in another state. *See* 51 Am.Jur.2d *Liens* § 68 (1983). However, "a court of equity, having authority to act upon the person, may indirectly act upon real estate in another state through the instrumentality of this authority over the person." *Scheper v. Scheper*, 125 S.C. 89, 103, 118 S.E. 178, 183 (1923) (citing *Bates v. Bodie*, 245 U.S. 520, 38 S.Ct. 182, 62 L.Ed. 444 (1918)).

exceptional circumstances that warrant it, during any period and beyond the child's minority. . . ."); *Bull v. Smith*, 299 S.C. 123, 382 S.E.2d 905 (1989). If, however, certain factors are met, the family court may order a divorced parent to pay the college expenses of an emancipated child. *See Risinger v. Risinger*, 273 S.C. 36, 253 S.E.2d 652 (1979). Generally, the family court should employ the *Risinger* test, not a "change of circumstances" analysis, in determining whether the parent's support obligation should extend past the child's eighteenth birthday when the child chooses to attend college. *Bull*, 299 S.C. at 125, 382 S.E.2d at 906.

In the present case, however, the 1982 divorce decree ordered Husband to pay child support until Children completed their college educations. Husband cannot now challenge the decree on this point. Where, as here, an obligation to pay child support throughout a child's college education is long fixed, the obligor parent will not be permitted to petition the court at the eleventh hour, just as a child is entering college, for relief the parent should have sought years earlier.

Therefore, the only question before us is whether the evidence in the Record supports the family court's decision to increase child support. Wife presented evidence of a dramatic increase in Children's expenses. Moreover, there was evidence that Husband had the ability to pay the increased support. Accordingly, we affirm the increase in child support.

## C. INCREASE IN ALIMONY OBLIGATION

Husband next argues the family court erred in increasing Wife's alimony. We disagree.

S.C.Code Ann. § 20–3–170 (1985) authorizes parties to apply to the family court for modifications of periodic alimony. The statute requires the family court to give both parties an opportunity to be heard and to present evidence relevant to the appropriate level of alimony. After the parties have done so, the family court "shall make such order as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the supporting spouse, decreasing or increasing or confirming the amount

of alimony provided for in such original judgment or terminating such payments." S.C.Code Ann. § 20–3–170. The change in circumstances must be substantial or material in order to justify a modification of the previous alimony obligation. *E.g., Calvert v. Calvert,* 287 S.C. 130, 138, 336 S.E.2d 884, 888 (Ct.App.1985) ("Generally, to warrant a modification in either alimony or child support, the change of circumstances must be either substantial or material.") (citations omitted).

In an equity case that has been tried before a judge, an appellate court may determine the facts in keeping with its own view of the preponderance of the evidence. Nevertheless, "the question of whether to increase or decrease support based on a finding of changed circumstances is a matter committed to the sound discretion of the family court." *Brunner v. Brunner,* 296 S.C. 60, 64, 370 S.E.2d 614, 616 (Ct.App.1988). For that reason, the family court's determination whether to modify support will not be disturbed on appeal unless the family court abused its discretion. *Id.*

The record in this case supports the family court's determination regarding alimony. Wife's medical problems continue to be severe and to hamper her earning ability. Moreover, there was evidence of an increase in Husband's standard of living. The judge's order from the 1982 divorce decree found Husband earned slightly over $100,000 per year. In the October 14th order, the judge found Husband's income and lifestyle had significantly improved since the 1982 divorce decree. In our opinion, there is sufficient evidence to sustain such a finding.

### D. CONTEMPT ORDER/JAIL SENTENCE

Husband next argues that the family court (1) should not have calculated alimony arrearages for periods during which Wife was hospitalized for chemical dependency or lived with another man; (2) should not have found Husband in contempt for his failure to pay alimony and child support; and (3) should not have sentenced Husband to a year in jail for his contempt of court. We disagree on all counts.

First, Husband had a clear obligation to pay Wife alimony. The family court found that Wife's limited period of

chemical dependency following the death of her eldest daughter did not constitute a sufficient reason to cut off alimony, nor did her residing with a man following the destruction of her home by Hurricane Hugo. The family court's decision on this matter is well supported by the facts.

 Husband's argument that he should not be found in contempt because he lacked the funds to satisfy his alimony and child support obligations is equally without merit. Husband does not dispute his failure to pay alimony and child support. Instead, he argues he lacks the means to satisfy his obligations; that is, because he *cannot* pay the support, his failure to do so is not willful. We consider three factors in the record in assessing Husband's claim that he was unable to pay the alimony and child support: (1) Husband's ownership of valuable property, as evidenced by his own financial declaration; (2) Husband's extensive history of lying to virtually everyone about his assets or hiding those assets; and (3) Husband's very convenient failure to make any serious attempt to obtain employment outside the family Amway business.

Husband acknowledged that he owned real property worth a fair amount of money, but claimed that he could not encumber or mortgage the property because of agreements with the IRS and the South Carolina Tax Commission.[9] He also suggested that even selling all his property would not satisfy his tax debts. However, Husband is well-educated and capable of employment which would allow him, if he were acting in good faith, to begin to satisfy his arrearages. Even assuming Husband could not have begun to pay off his arrearages by monies earned through the practice of law, Husband demonstrated no more than a lackluster effort to secure *any* employment. In light of the evidence concerning the substantial amount of property listed on Husband's financial declaration, his earning capacity, and his history of understating and lying

---

**9.** Although his plea agreement is part of the Record, we have found nothing in the Record (aside from Husband's testimony, which is of dubious credibility at best) about any agreement with the IRS not to encumber the property. Furthermore, Husband's position on this is curious given his assignment to his current wife of his interest in the Colorado home.

about his income, the family court's finding of contempt was well supported by the evidence.

Finally, the jail sentence is eminently reasonable in view of Husband's unwillingness to comply with the terms of the 1982 divorce decree fixing his alimony and child support obligation. We note that every time Husband faces a serious threat of incarceration, he is mysteriously able to secure funds to meet his obligations.

### E. ATTORNEYS' FEES

Husband next argues the attorneys' fees assessed against him by the family court were excessive. With one exception, we disagree.

Under S.C.Code Ann. § 20–7–420(2) (Supp.1995), the family court has the authority to order payment of attorneys' fees in marital litigation. Actions for alimony or modification of alimony fall within this rule.

In making an award of attorneys' fees, the family court must consider six factors: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). When a contract or statute authorizes an award of attorneys' fees, the trial court should make specific findings of fact on the record for each of the six factors to be considered. *Blumberg v. Nealco,* 310 S.C. 492, 494, 427 S.E.2d 659, 661 (1993). If on appeal there is inadequate evidentiary support for each of the factors, the appellate court should remand so the trial court may make specific findings of fact. *Id.*

Here, the family court made specific findings as to the *Glasscock* factors, and the Record supports those findings. Wife presented testimony about the legal services she received, and the Record contains a detailed affidavit by Wife's counsel. In short, there is ample evidentiary support for the fee award.

However, we modify the fee award in one respect. Husband is correct that the family court's award of attorneys'

fees should not include fees incurred in the course of appellate representation. *See* Rule 222, SCACR (providing that "[c]osts on appeal shall be taxed only in the appellate court"). Accordingly, the award of attorneys' fees should be reduced to exclude any amounts representing charges for prosecuting or defending an appeal.

### F. CALCULATION OF INTEREST ON ARREARAGES

Husband next argues that the family court erred in its method of calculating interest on his alimony and child support arrearages. Specifically, he argues such interest should begin to accrue only from the time of the family court's final order, rather than from the time each child support payment became due. We disagree.

In *Casey v. Casey,* 311 S.C. 243, 245–46, 428 S.E.2d 714, 716 (1993), this Court found that "fixed awards of money for equitable distribution shall accrue interest at the post-judgment rate from the date of the judgment, or *in the case of specified periodic payments from the date each payment becomes due and owing.*" (emphasis added). Although *Casey* concerns equitable division awards rather than alimony, the principle is the same. Here, Husband was ordered in the 1982 divorce decree to make monthly payments of alimony and child support to Wife. That decree constituted the "judgment" ordering the periodic payments. The fact that Wife had to get a contempt order in 1994 because of Husband's failure to meet his alimony and child support obligations does not mean the 1994 order was the first judgment ordering such payments. To alter the interest requirement in the way Husband suggests would reward Husband for failing to meet his obligations when they were due.

Application of the *Casey* rule to alimony payments puts South Carolina in the mainstream of jurisdictions that have addressed this issue:

> In the greater number of the cases dealing with the question, interest has been allowed on unpaid alimony, ordinarily, because of a statute providing for interest on a money judgment. Thus interest has been allowed on a judgment for alimony in gross from the date payment was due until the date payment was made. *And where the judgment or*

*decree ordered the payment of alimony in installments, interest has been allowed on each installment from the date the particular installment matured.*

24 Am.Jur.2d *Divorce and Separation* § 763 (1996); *see also, e.g., In re Sanborn*, 55 Wash.App. 124, 777 P.2d 4 (1989) (wife was entitled to interest on periodic alimony payments as of due date of each such payment); *Morgan v. Morgan*, 452 So.2d 255 (La.Ct.App.1984) (interest is due on alimony at time each support payment becomes due). This is a sound rule, and the family court's treatment of interest in this case was appropriate.

### G. CALCULATION OF DISPUTED ARREARAGE

 Finally, Husband argues the family court erred in its calculation of the alimony and child support arrearages because it considered monthly alimony and child support accruing after the date of the hearing in this matter. We see no error.

As Wife notes, Husband does not suggest that he paid alimony or child support for the months following the hearing in this matter but preceding issuance of the final (October 14, 1994) order. Moreover, Husband did not object in his post-trial motions to the calculation of arrearages in the October 14, 1994 order. Under these circumstances, there is no error.

 Husband also argues the family court should not have included in its calculation of arrearages a retroactive increase in alimony and child support for the month of September 1994. We affirm the calculation of arrearages in its entirety. The decision to order retroactive support rests within the sound discretion of the family court and should not be reversed absent an abuse of discretion by the family court. *Hallums v. Hallums*, 296 S.C. 195, 371 S.E.2d 525 (1988). There was no abuse of discretion here.

### H. CONCLUSION FOR OCTOBER 14 ORDER

We affirm the portion of the family court's order finding Husband in contempt of court and sentencing him to one year in jail. We also affirm the increases in alimony and child support. We remand the matter for reconsideration of the award of attorneys' fees in light of our holding that portions of

the fee award related to appellate representation should be excluded.

We reverse and vacate the family court's direct transfer of the Georgetown and Colorado properties to Wife. The family court's October 14 order instead had the effect of creating a lien on Husband's properties. Wife may enforce the liens as provided by law. The family court should determine the amount Husband owes for arrearages and attorneys' fees and satisfy this amount from the proceeds from the foreclosure sale. Any amount exceeding Husband's indebtedness shall be placed in an escrow account from which Wife may draw her monthly alimony and child support still owing.

## II. APPEAL FROM MAY 23, 1995 FAMILY COURT ORDER

The family court's May 23, 1995 order found Husband in contempt of court for his failure to satisfy the arrearages referenced in the October 14 order, as well as subsequent alimony and child support obligations and for his transfer of assets to his current wife in violation of the October 14 order. Husband raises numerous issues on appeal, many of which relate to the admissibility of certain evidence tending to establish his net worth.

Even assuming the documents and other evidence about which Husband now complains were improperly admitted,[10] there is sufficient evidence to sustain the family court's finding of contempt. Husband admits his failure to pay the alimony and child support at issue. The only real issue was Husband's financial ability to satisfy his obligations to Wife. Without considering the "business records" showing Husband's representations to a bank concerning his net worth, we conclude Husband possessed the means to pay alimony and child support. That alone is enough to sustain the contempt order. We do not reach issues concerning the transfer of property to Husband's current wife or other issues that do not affect the family court's ability to determine Husband was in contempt of court for his failure to pay alimony.

---

10. The particular records at issue were admitted pursuant to the business records exception to the hearsay rule. The records almost certainly do not fall within the business records exception; among other things, they are personal records. *See* Rule 803(6), S.C.R.Evid.

We note that the attorneys' fees award should not include fees associated with appellate representation. *See* Rule 222, SCACR.

### III. APPEAL FROM ORDERS OF SEPTEMBER 1, 1995 AND NOVEMBER 30, 1995

The family court's September 1 finding of contempt against Husband was based on his having transferred his interest in the Colorado property to his current wife and lying to the family court about the transfer at the April 25, 1995 hearing. The October 14 order expressly prohibited Husband from transferring that property. Husband did transfer the Colorado property in contravention of the October 14 order, and we agree that Husband lied to the family court about the transfer. We therefore affirm the family court's finding of contempt.

This case is **AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART AND REMANDED** for further proceedings consistent with this opinion.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.