673 S.E.2d 818

**Karen Dallis CARPENTER, Appellant,**

v.

**James Edward BURR, Frank C. Gavay, Cynthia A. Gesualdi and Susan S. Fisher, Respondents.**

No. 4483.

Court of Appeals of South Carolina.

Heard Dec. 11, 2008.
Decided Jan. 12, 2009.
Rehearing Denied Feb. 25, 2009.

496

James L. Hills, of Myrtle Beach, for Appellant.

Randall K. Mullins, of N. Myrtle Beach, for Respondents.

THOMAS, J.:

This is an appeal of a divorce decree. Karen Dallis Carpenter, the wife, argues the family court erred in (1) failing to grant her a divorce on the ground of physical cruelty, (2) finding that certain dental and medical expenses she incurred after filing this action were not incurred for marital purposes, (3) declining to order James Edward Burr, the husband, to reimburse her for certain dental bills, (4) finding the home where the parties lived before they separated had not been

transmuted and declining to award her a special equity in the asset, (5) denying her alimony, and (6) ordering her to pay a substantial portion of Burr's attorney's fees. We affirm.

## FACTS AND PROCEDURAL HISTORY

The parties married on December 13, 2002, in Horry County and last resided together as husband and wife on March 27, 2004. At the time of the merits hearing, Carpenter was sixty-one and Burr was sixty-five.

Before the marriage, Carpenter had worked as an associate professor of nursing and education at Coastal Carolina University from 1978 until 1999, when she retired for medical reasons. Burr had also retired when the parties married, but considered himself an investor.

The parties resided in a home in Tidewater Plantation, North Myrtle Beach. Burr had acquired the home in 2000, before the marriage. The property was titled in Burr's name, along with the names of his nieces and nephew, who are the remaining respondents in this case. With Burr's approval, Carpenter was included in the wind, hail, and home insurance policies on the home and contributed toward payment of the premiums. Carpenter was not listed on the mortgage; however, she paid one-half of each mortgage payment on the home.

After an altercation on March 27, 2004, about sixteen months after they married, the parties separated. According to Carpenter, a disagreement arose between the parties regarding the watering of their plants, whereupon a struggle ensued for the garden hose. Carpenter alleged Burr threw her on the ground, dropped on her with his knees and stuck a garden hose in her mouth, requiring her to seek emergency room treatment. According to Carpenter, the incident also resulted in the need for extensive dental work and caused intense pain in her spine, which was determined at the emergency room to be spondylolisthesis. Although Burr denied he was the aggressor, he admitted on direct examination that he later pled "no contest" to an assault and battery charge arising from the incident.

Carpenter filed this action on June 11, 2004, requesting (1) a divorce on the ground of physical cruelty or in the alternative

an order of separate maintenance and support, (2) alimony and separate maintenance and support, (3) exclusive possession of the Tidewater Plantation home and its contents, (4) exclusive rights to the vehicle she was currently driving, (5) payment by Burr of insurance and medical expenses for both parties, (6) a favorable division of the marital assets, (7) litigation expenses and attorney's fees, and (8) various restraining orders. Simultaneously, she filed a motion for temporary relief. A temporary hearing took place on June 29, and July 8, 2004. On July 8, 2004, Carpenter amended her complaint to add Respondents Frank C. Gavay, Cynthia A. Gesauldi, and Susan S. Fisher, relatives of Burr whose names appeared on the title to the Tidewater Plantation home, as defendants only in regard to the issue of equitable division. She also amended her motion for temporary relief. Respondents Burr, Gavay, Gesauldi, and Fisher answered and counterclaimed on August 4 and 5, 2004. Carpenter replied to Respondents' responsive pleadings on August 23, 2004.

On August 23, 2004, the family court issued an order from the temporary hearing, granting Carpenter, among other relief, exclusive use and occupancy of the Tidewater Plantation home pending further order of the court. Carpenter and Burr were each ordered to pay one half of the monthly mortgage payments.

On June 17, 2005, Burr amended his answer and counterclaim to seek a divorce on the ground of a one-year separation. Although Carpenter, in her reply, admitted the parties had been separated for one year, she denied Burr was entitled to a divorce on this ground.

Another temporary hearing took place on June 27, 2005. On June 30, 2005, the family court issued an order from this hearing denying Burr's motion to repossess the Tidewater Plantation home, denying Carpenter's request to take the deposition of a marriage counselor but allowing her to subpoena the witness for the final hearing, and granting mutual restraining orders.

The final hearing in the matter took place on September 12 and 13, 2005, and on December 5, 6, and 8, 2005. On January 4, 2006, the family court issued an interim temporary order that, *inter alia*, ordered Carpenter to vacate the Tidewater

Plantation home and granted Burr temporary possession of the home.

In the final order and decree of divorce, signed February 14, 2006, and filed February 21, 2006, the family court, *inter alia*, (1) denied Carpenter's request for a divorce on the ground of physical cruelty; (2) granted Burr a divorce based on a one-year separation, (3) reserved Carpenter's claim for alimony for further disposition based on a material change in circumstances; (4) denied Carpenter's claim for transmutation of the Tidewater Plantation home and awarded Respondents full possession and ownership of the asset; (5) divided the personal property; (6) required the parties' to be responsible for their own attorney's fees and costs; (7) issued mutual restraining orders to Carpenter and Burr; and (8) directed the parties to be responsible for debts in their names without contribution from each other.

Both sides moved to alter or amend, and on May 11, 2006, the family court issued an order (1) denying Carpenter's motions for a new trial and for attorney's fees, (2) awarding Burr $15,000.00 in attorney's fees, and (3) denying Burr's motion to delete the reservation of alimony. Carpenter timely filed a notice of appeal on June 9, 2006.

## ISSUES

I. Did the family court err in failing to find physical cruelty against Burr?

II. Did the family court err in failing to find Carpenter's spondylolisthesis and other injuries were caused by Burr during the incident on March 27, 2004?

III. Did the family court err in failing to order Burr to pay certain medical and dental expenses that Carpenter incurred?

IV. Should the family court have found the Tidewater Plantation home had been transmuted into marital property or, in the alternative, awarded Carpenter a special equity interest in the asset?

V. Did the family court err in declining to award Carpenter alimony?

VI. Did the family court err in ordering Carpenter to pay a substantial portion of Burr's attorney fees?

## STANDARD OF REVIEW

"In appeals from the family court, an appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence." *Wooten v. Wooten*, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005) (citing *Rutherford v. Rutherford*, 307 S.C. 199, 414 S.E.2d 157 (1992) and *Owens v. Owens*, 320 S.C. 543, 466 S.E.2d 373 (Ct.App. 1996)). "This broad scope of review does not, however, require the appellate court to disregard the findings of the family court." *Id.* (citing *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E.2d 616 (1981)). "Neither is the appellate court required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Id.* (citing *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981)). Moreover, "when an appellate court chooses to find facts in accordance with its own view of the evidence, the court must state distinctly its findings of fact and the reason for its decision." *Dearybury v. Dearybury*, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002) (interpreting Rule 220(b)(1), SCACR).

## DISCUSSION

### I. Physical Cruelty

Carpenter alleges several errors in the family court's finding that she failed to prove her claim for physical cruelty against Burr. First, Carpenter argues the court mistakenly refused to consider Burr's admission during direct examination that he pled "no contest" to an assault and battery charge arising from the incident that led to the parties' separation as a conclusive finding that he had committed physical cruelty. Second, she maintains information regarding Burr's visits with a counselor proffered through the counselor's testimony or cross-examination of Burr should have been admitted. Finally, she takes issue with the finding that the altercation leading to the parties' estrangement was the only incident of alleged physical cruelty and criticizes the court's consideration of an incident in which she allegedly was the aggressor.

## A. Burr's *nolo contendere* plea

Acknowledging a *nolo contendere* plea is generally not admissible during a civil proceeding, Carpenter suggests Burr's voluntary acknowledgment of his *nolo contendere* plea was tantamount to an admission that he had committed physical cruelty against her. In support of this argument, she cites section 17–23–40 of the South Carolina Code, under which such a plea, once entered, authorizes the court to deal with the defendant "in like manner as if he had entered a plea of guilty thereto." S.C.Code Ann. § 17–23–40 (2003). She further references Rule 609 of the South Carolina Rules of Evidence, which allows the admission of a *nolo contendere* plea "for the purpose of attacking the credibility of a witness." Rule 609, SCRE. These authorities, however, address the legal significance of a *nolo* plea for purposes of the criminal proceeding during which it is made and the admissibility of such a plea for impeachment purposes. We further hold that, although Burr's voluntary discussion about the plea during his direct testimony rendered it admissible, the family court properly declined to consider it as dispositive evidence that he had committed physical cruelty against Carpenter on March 27, 2004. Our supreme court has recently noted the nature of a *nolo contendere* plea, in contrast to that of a guilty plea or an *Alford* plea, prevents its use "as substantive evidence of guilt in a subsequent proceeding." *Zurcher v. Bilton,* 379 S.C. 132, 136–37 n. 2, 666 S.E.2d 224, 227 n. 2 (2008). Furthermore, proof of physical violence does not necessarily establish physical cruelty as a ground for divorce. *See Brown v. Brown,* 215 S.C. 502, 508, 56 S.E.2d 330, 333 (1949) (stating physical cruelty, for purposes of divorce litigation, "as generally been defined by our courts as actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe"). Here, as noted by the family court, there was evidence in the record suggesting (1) the injuries Carpenter sustained during the altercation were less serious than she alleged; and (2) after the parties separated, Carpenter voluntarily initiated contact with Burr, thus making questionable her claim that she was "deathly afraid" of him. Burr's voluntary admission of his *nolo contendere* plea, then, was not a concession on his part that Carpenter was entitled to a divorce on the ground of physical cruelty.

B. Evidence concerning Burr's statements and conduct during counseling sessions

Carpenter also contends the family court erred in refusing to admit the proffered testimony of a licensed professional counselor that, in Burr's presence, she had told the counselor that Burr "threw her down and jumped on her" and "shoved a garden hose in her mouth" and Burr never attempted to refute her statements. She also alleges error in the court's refusal to allow her attorney to cross-examine Burr about his communications with the counselor. The family court held the prohibition in section 19–11–95(D)(1) against the use of "confidences revealed" during the course of treatment from a mental health provider as "evidence of grounds for divorce" applied to the evidence at issue. *See* S.C.Code Ann. § 19–11–95(D)(1) (Supp.2007). Carpenter, however, argues any communications between Burr and the counselor during sessions when the counselor met with both parties were not "confidences" because her presence prevented them from being "private." We disagree.

Section 40–75–190 of the South Carolina Code provides that "[a]ll communications between clients and their licensed professional counselor or marriage and family therapist are considered privileged as provided in Section 19–11–95 . . . ." *Id.* § 40–75–190 (2001). Under section 19–11–95, "confidence" is defined as "a private communication between a patient and a provider or information given to a provider in the patient-provider relationship." *Id.* § 19–11–95(A)(3) (Supp.2007).

To date, we have found no decisions from the courts of this State addressing the question of whether the "private" nature of communications from a patient to his or her mental health treatment provider is compromised by the presence of a co-participant in the treatment when the communications at issue are made. Our research of case law from other jurisdictions, however, indicates that, at least where marriage counseling is concerned, it would defeat the purpose of the treatment to hold the confidential relationship between a patient and a counselor and the privileged nature of a confidences communicated during the course of such a relationship are compromised by the presence of the patient's spouse during the particular counseling session when the confidence

is revealed. *See Mrozinski v. Pogue,* 205 Ga.App. 731, 423 S.E.2d 405, 408 (1992) (noting that "[t]he object of the privilege is to encourage the full trust of the patient so as to persuade him to reveal his innermost feelings and private acts" and suggesting the privilege is "essential" because "nowhere is the patient more reluctant to reveal his true feelings and thoughts than in family therapy"); *Touma v. Touma,* 140 N.J.Super. 544, 357 A.2d 25, 30 (1976) ("Since marriage counseling often brings the two spouses together for therapy, the fact that client and counselor are in the presence of a third—here the marital partner—does not waive the privilege."). Moreover, our decision to apply the patient-provider privilege to all communications made by a marriage counseling participant during treatment, regardless of whether the other spouse was in attendance, is consistent with this State's policy of supporting the marriage relationship and encouraging reconciliation of married couples. *Cf.* S.C.Code Ann. § 20–3–90 (1976) (mandating that a divorce decree state that an attempt was made to reconcile the parties to such an action and that the efforts were unavailing); *Grant v. Grant,* 233 S.C. 433, 437, 105 S.E.2d 523, 525 (1958) ("In a controversy relating to marriage the Court is concerned not only with the rights of the individuals involved but also with the public interest."); *Hickum v. Hickum,* 320 S.C. 97, 107, 463 S.E.2d 321, 326 (Ct.App.1995) (Goolsby, J., concurring) (noting decisions of the court should "further this state's public policy of preserving marriages and encouraging reconciliations").

C. Evidence about other incidents of alleged physical cruelty

Finally, Carpenter contends the family court erred in apparently disregarding evidence concerning other incidents, one occurring before the parties' marriage and the other after their separation. Carpenter maintains these other incidents discredit the family court's finding that the altercation giving rise to the parties' estrangement was the only incident of alleged physical cruelty. She also complains about a reference in the appealed order to an incident in which she allegedly was the aggressor. In her brief, however, Carpenter cites no case law or other authority to support her position that a family court must consider allegations of abuse occurring before a

marriage or after a separation in determining whether a spouse has established physical cruelty as a ground for divorce. Furthermore, she does not explain why the family court erred in finding she was the aggressor in another physical altercation during the marriage. We therefore hold these arguments are conclusory and decline to address them further. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (holding an issue will be deemed abandoned when the appellant fails to provide arguments or supporting authority).

## II. Finding Regarding Carpenter's Spondylolisthesis and Other Problems

■ Carpenter alleges error in the family court's refusal to find that her spondylolisthesis and injuries to her teeth were caused by Burr during the altercation that led to the parties' separation. There is evidence in the record, however, supporting the family court's findings that Burr was not responsible for the afflictions that Carpenter claimed she suffered at his hand, including (1) Carpenter's admission, only after being confronted with the findings of the administrative law judge in her social security case, that she had become disabled from spondylolisthesis in 1999; (2) records from the radiologist who examined Carpenter during the March 2004 incident indicating the spondylolisthesis with which she was diagnosed at the time was consistent with degenerative disc change; and (3) Carpenter's acknowledgment that, before the incident leading to the parties' separation, she fell numerous times and had engaged in physical activities that could have aggravated her condition. In our view, the family court's findings on this issue were contingent on the credibility of the witnesses, a determination we believe was appropriately made in this case by the presiding family court judge. *See Gambrell v. Gambrell,* 295 S.C. 457, 460, 369 S.E.2d 662, 663 (Ct.App.1988) ("Although we have jurisdiction in domestic matters to find facts based on our own view of the preponderance of the evidence, we are not required to disregard the findings of the trial judge, who saw and heard the witnesses and was in a better position to evaluate their testimony.").

### III. Payment of Medical and Dental Expenses

 Carpenter next contends the family court incorrectly determined it did not have jurisdiction to award her certain medical and dental expenses, contending they were valid marital debts. We agree with Carpenter that, notwithstanding the limited jurisdiction of the family court, it can make an equitable distribution award or a special equity award that serves a comparable purpose to money damages if the parties frame the issue appropriately. *See Peake v. Peake,* 284 S.C. 591, 593, 327 S.E.2d 375, 376 (Ct.App.1985) (noting the parties were bound by their stipulations that the issue was reimbursement rather than equitable division). Nevertheless, because the family court's finding that Carpenter did not establish her entitlement to a divorce on the ground of physical cruelty was supported by the evidence, we likewise uphold the court's refusal to order Burr to pay her medical and dental bills, regardless of whether the court erred in stating it lacked jurisdiction to award damages.

### IV. Marital Nature of the Tidewater Plantation Residence

 Carpenter argues the Tidewater Plantation residence was transmuted into marital property and should have been included in the marital estate. In the alternative, she contends the family court should have awarded her a special equity in the asset. We disagree.

Burr acquired the house more than one year before the parties married and had it titled in his own name and the names of several members of his extended family. Although Carpenter was listed on numerous insurance policies on the house and paid a share of the premiums, we concur in the family court's finding that this participation was not sufficient to infer that Burr intended to treat the home as marital property; rather, it reflected Burr's concern that Carpenter be protected because her personal effects were in the home. Furthermore, contrary to Carpenter's contention that she was unaware that she was not on the deed until after the parties' separation, the record contains an exhibit indicating otherwise. We further believe that the short duration of the marriage, the lack of evidence that the parties took out any joint loans to improve the property, and fact that Carpenter's contributions

to the equity in the property were not significant support a finding that the home had not been transmuted.

In the alternative, Carpenter alleges error in the finding by the family court that she failed to provide evidence that she acquired a special equity in the property. In support of this argument, Carpenter notes she gave Burr a large sum of money to "invest," which she claims was used in the construction of the home. She further points out that she paid one half of the monthly mortgage payments. The family court, however, found that (1) prior to the marital litigation the investment account was "liquidated and [her] funds restored to her in full"; and (2) Carpenter's contributions to the mortgage payments during the parties' brief marriage did not result in a material reduction in the mortgage balance principal. Carpenter does not specifically challenge these findings on appeal, and we hold they constitute adequate evidence supporting the determination by the family court that Carpenter is not entitled to a special equity in the Tidewater Plantation residence.

## V. Alimony

Carpenter argues the refusal by the family court to award her alimony was error because she will have ongoing medical expenses based on the injuries she allegedly sustained from Burr's actions. We disagree. The family court gave adequate consideration to the statutory criteria for alimony, in particular, the parties' incomes and nonmarital assets. We also note that the appealed order did not foreclose Carpenter's right to seek alimony in the future based on a substantial change of circumstances.

## VI. Attorney's Fees

Finally, Carpenter contests the award of attorney's fees to Burr; however, the only argument she makes regarding this issue is that the fees were improper given the family court's findings on the other issues she has appealed. Because we have affirmed these other issues, we likewise uphold the attorney's fees award.

508

## CONCLUSION

For the foregoing reasons, we affirm the family court order in its entirety.

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.