705 S.E.2d 78

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Appellant,**

v.

**Donellivin POLITE, Respondent.**

**No. 4774.**

Court of Appeals of South Carolina.

Submitted April 1, 2010.

Decided Jan. 19, 2011.

Paul Fredrick LeBarron, of Charleston, for Appellant.

Donellivin Polite, pro se, for Respondent.

WILLIAMS, J.

Donellivin Polite sought modification of his child support payments when one of his three children reached the age of majority. After the parents agreed to a reduced amount of support for the remaining children, the family court ordered the support be retroactively reduced to a date prior to the filing of the modification action. The South Carolina Department of Social Services (DSS) appeals. We reverse.

## FACTS

On August 5, 2005, the DSS Child Support Division (Division) served a Notice of Financial Responsibility upon Polite to establish his child support obligation for his three children. Polite appeared without representation at a September 2005 conference where he was ordered to pay bi-weekly support in the amount of $354 beginning September 30, 2005. The eldest child turned eighteen years old on December 17, 2005.

Polite testified his last phone call to the Division regarding modification was sometime in June 2006, and DSS conceded Polite called at this time. DSS stated a review was not completed until September 2007, and an administrative process negotiation was held on December 13, 2007. At the negotiation, the parents agreed to bi-weekly support payments of $304.62 for the two remaining children, but Polite sought retroactive application. The matter was continued for a judicial hearing on January 18, 2008.

At the January hearing, Polite testified he went to the Division sometime in July 2005,[1] received paperwork, and was told the Division would get back in touch with him. However, Polite also stated the Division told him at that time that he would have to "come back in for a reevaluation for the oldest kid [who] was going to turn 18 six months later." Polite said the Division never called or scheduled anything. Polite, however, never stated he returned to the Division six months later for a reevaluation as previously instructed. Evidence was

---

1. We note a discrepancy in Polite's testimony as he testified he first called the Division in July 2005, six months prior to the eldest child's December 2005 birthday, but he was not served with his Notice of Financial Responsibility until August 2005 and only began paying ordered support in September 2005.

admitted showing the eldest child had dropped out of high school. The family court stated, "In light of the fact the child was not in school, I'm going to make [the reduction] retroactive ... the State collects [support] for the child. And if the child is not doing what he or she is supposed to be doing, he doesn't get it."

DSS objected, arguing the action was not filed until December 13, 2007, and modification of child support is improper on amounts accrued before filing and service of a modification action. DSS further contended when there are multiple children, the support will continue at the ordered rate unless changed by a court order. However, the family court found Polite contacted the Division, which then told Polite it would get back to him, and the Division did not advise him he had to file anything. Although the family court found the Division formally filed the action on December 13, 2007, it ruled the reduction would be made retroactive to July 1, 2006. In doing so, the family court stated, "I'm not supposed to give [Polite] that, but I'm giving [him] a break."

DSS filed a motion to reconsider, arguing Polite's phone call on or about July 1, 2006, did not initiate the modification action and the family court lacked authority to retroactively modify child support that accrued before the filing and service of a modification action. DSS cited South Carolina cases and statutes in support of its position, but the family court questioned whether Polite, as an unrepresented lay person, had an obligation to know the legal precedents.

The family court noted Polite asked to be notified of the procedures he needed to take to reduce his payments. However, DSS did not give him the requested notice, and Polite continued to pay the full amount of child support until the family court's ruling. The family court observed that when the family court orders a parent to pay child support, it generally includes a provision anticipating emancipation. Finding no such evidence here, the family court called Polite's case one that "slipped through the cracks." The family court questioned whether:

[I]n light of the overall facts of this case, should [Polite's prior phone calls] have been sufficient to place the [Division] on notice or given them reason to give him an answer prior

to ... January of 2007, some eighteen months after he made his request[?] Is that reasonable for him to have to pay eighteen months of child support for failure to respond to his inquiry?

The family court affirmed its earlier order, acknowledging Polite's ignorance of the law was no excuse, but reasoning the Division's failure to provide Polite with instructions worked an injustice. The family court held Polite's phone call was notice to the Division, and the Division had a duty to provide Polite with information upon his request. This appeal followed.

## ISSUES ON APPEAL

1. Did the family court err in expanding the Division's duty to justify the retroactive modification?

2. Did the family court err in granting a retroactive modification to a time before filing and service of the modification action?

## STANDARD OF REVIEW

■ On appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Carpenter v. Burr,* 381 S.C. 494, 501, 673 S.E.2d 818, 822 (Ct.App.2009). Nevertheless, this broad scope of review does not relieve the appellant of the burden of proving the family court committed error. *Divine v. Robbins,* 385 S.C. 23, 31, 683 S.E.2d 286, 290 (Ct.App.2009).

## LAW/ANALYSIS

### 1. The Division's Duty in Modification Actions

■ DSS argues the family court erred in finding Polite's phone call was sufficient notice requiring action by the Division, and DSS asserts this finding expanded the Division's duty to act. DSS further argues the Division complied with its duty under South Carolina Code section 63–17–830 (2010). We agree.[2]

---

2. Polite did not submit a brief in response to this appeal.

Section 63–17–830(A)[3] of the South Carolina Code (2010) provides in part:

The obligor or obligee may file a written request for modification of an order issued under this article or an existing order of the court with the division by serving the division by certified mail. If the division does not object to the request for modification based upon a showing of changed circumstances as provided by law, the division shall serve the obligor with a notice of financial responsibility ... and shall proceed as set forth in this article.

Subsection (B) states, "A request for modification made pursuant to this section does not preclude the division from enforcing and collecting upon the existing order pending the modification proceeding." S.C.Code Ann. § 63–17–830(B) (2010). Subsection (C) explains, "Only payments accruing subsequent to the modification may be modified." S.C.Code Ann. § 63–17–830(C) (2010).

DSS and the family court agreed the action was formally filed by the Division on December 13, 2007, and the record contains no evidence of a different date of filing and service.[4] Regardless, the family court retroactively modified the child support to the stipulated date that Polite telephoned the Division. Section 63–17–830(A) plainly states if an obligor seeks modification, the proper step is to serve the Division by certified mail. *See Sloan v. Hardee,* 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007) ("When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning."). Although the family court essentially treated Polite's phone call as a filing, this decision is contrary to section 63–17–830(A)'s mandates.

While it is regrettable Polite was unaware of proper procedure, no statute or case law places a duty upon the Division to instruct obligors how to pursue modification. Rather, statutory law provides an obligor seeking modification may file a

---

3. S.C.Code Ann. § 63–17–830 (2010) was formerly codified as § 20–7–9565 (Supp.2007). While the Legislature has recodified this section since the filing of this action, the substantive statutory language applicable to Polite's case remains unchanged.

4. This finding is apparently based on the Notice of Financial Responsibility directing Polite to appear at the December 13, 2007 conference.

written request by certified mail. Affirming the family court's finding that a phone call was notice would abandon the statute's specificity and replace it with a casual, circumstance-driven means of initiating a modification action. Moreover, from a practical standpoint, allowing a modification action to be commenced by a phone call, even if in good faith, potentially opens a Pandora's box, which we find untenable. Upholding a rule of law that permits a phone call to be the official means of notice would be difficult, if not impossible, to verify, leaving the issue of whether notice was properly given in many instances to a swearing match. Accordingly, we reverse the family court's finding that Polite's phone call to the Division was sufficient to initiate this modification action.

## 2. Retroactive Modification Before Time of Filing and Service

■ DSS argues section 63–17–310 of the South Carolina Code (2010) provides that modifications by the family court are not effective to any installment accruing prior to filing and service of an action for modification.[5] DSS further argues the statutory bar is absolute against retroactive child support decreases, and modifications of multi-child support orders are prospective by court action rather than at the time of an older child's emancipation.

■ Under South Carolina law, a parent's obligation to pay child support generally extends until the child reaches majority then ends by operation of law. *Thornton v. Thornton*, 328 S.C. 96, 109, 492 S.E.2d 86, 93 (1997). The family court has exclusive jurisdiction:

> To make all orders for support run until further order of the court, except that orders for child support run until the child is eighteen years of age ...; or without further order, past the age of eighteen years if the child is enrolled and still attending high school,....

S.C.Code Ann. § 63–3–530(A)(17) (2010).[6] Nevertheless, "where one of multiple children reaches majority, a parent's

---

5. S.C.Code Ann. § 63–17–310 was previously codified in identical language as § 20–7–933 (Supp.2007).

6. S.C.Code Ann. § 63–3–530 was previously codified as § 20–7–420 (Supp.2007). When Title 63 was enacted in 2008, the Legislature

child support obligation will not be affected absent a family court order modifying the amount of support owed." *Blackwell v. Fulgum,* 375 S.C. 337, 343–44, 652 S.E.2d 427, 430 (Ct.App.2007).

> Where one of multiple children becomes emancipated, the family court does not extend the parent's support obligation on behalf of the emancipated child. The court simply continues the existing support agreement for the benefit of the other minor child[ren] until such time as the court, upon request of the supporting parent, can calculate a proper reduction in the support obligation based on a showing of changed circumstances.

*Id.* at 344, 652 S.E.2d at 430.

Section 63–17–310 provides that the family court has the authority to modify child support as the court finds necessary upon a showing of changed circumstances; however, "[n]o such modification is effective as to any installment accruing prior to filing and service of the action for modification." Nonetheless, our supreme court has found family courts may award retroactive increases of child support in special circumstances. *Harris v. Harris,* 307 S.C. 351, 415 S.E.2d 391 (1992).

In *Harris,* the mother petitioned for a retroactive increase after learning the father earned $400,000 annually for a number of years, rather than the $48,000 he previously claimed. *Id.* at 352–53, 415 S.E.2d at 392–93. Citing section 63–17–310, the family court believed it lacked jurisdiction to order retroactive modifications. *Id.* at 352, 415 S.E.2d at 392. The supreme court disagreed, finding section 63–17–310 "does not bar retroactive child support increases in special circumstances where, to do so, would result in serious injustice." *Id.* at 353, 415 S.E.2d at 392–93. The *Harris* court noted the child's best interests are the family court's paramount concern. The case was remanded to the family court for a determination of whether a retroactive increase of child sup-

---

incorporated language into 63–3–530(A)(17) that expressly permitted child support to run past the age of eighteen, even without further court order, if the child is enrolled and still attending high school as long as the support does not exceed high school graduation or the end of the school year after the child reaches nineteen years of age.

port should be awarded for the three years preceding the filing for modification. *Id.* at 354, 415 S.E.2d at 393.

In contrast, in *Blackwell,* a mother unilaterally reduced her child support payments after the eldest of two children turned eighteen and graduated from high school. The father sent letters to the mother, explaining she was in default and must seek a reduction by contacting his attorney, her attorney, or the family court. *Id.* at 341, 652 S.E.2d at 429. The mother did not respond. Approximately eighteen months later, the father filed a rule to show cause motion, and the mother failed to appear at the subsequent hearing. *Id.* at 342, 652 S.E.2d at 429. Ultimately, the family court held the mother was not entitled to unilaterally reduce her child support payments and was responsible for the full amount of support until the date she filed her motion for temporary relief, approximately twenty-two months after the eldest child turned eighteen. *Id.*

While we commend Polite for continuing to make timely child support payments in compliance with the child support order, we find *Harris* had more compelling circumstances and its holding was limited to special circumstances. Here, the family court's ruling was not similarly driven by a child's best interests; rather, the family court feared a strict application of the relevant statutes would work an injustice on Polite. However, *Blackwell* instructs that an existing support agreement continues for the benefit of other minor children until the court calculates a proper reduction. Because Polite's minor children continued to benefit during this time, we find the rationale espoused in *Blackwell* controlling in this situation. Accordingly, we find the family court improperly awarded a retroactive reduction of child support.

## CONCLUSION

Based on the foregoing, the family court's decision is

## REVERSED.[7]

---

7. We decide this case without oral argument pursuant to Rule 215, SCACR.

SHORT, J., concurs.

LOCKEMY, J., dissents in a separate opinion.

LOCKEMY, J.

I respectfully dissent. In my view, limited to the facts of this case, the Division put upon itself a commitment to assist Polite in properly seeking modification. Polite first encountered the Division when it served him with Notice of Financial Responsibility to establish support for his three children. Polite appeared without representation at a conference with the Division and signed an administrative process order requiring him to pay support. Polite expressed his concern that his oldest child would reach the age of eighteen four months later. Polite testified the Division promised to contact him to reevaluate his support obligation after his oldest child turned eighteen. As Judge Woods noted, if this matter was handled in court, the support order would have likely provided for an automatic reduction in Polite's support obligation upon the oldest child's eighteenth birthday.

Despite its assurance, the Division failed to contact Polite after his oldest child reached the age of eighteen and Polite telephoned the Division on several occasions seeking assistance. Judge Woods found that during Polite's last call in June or July 2006, Polite asked the Division what steps to take in order to have his support obligation modified and the Division informed him it would contact him at a later date. Based upon the Division's control of the situation since the beginning, and its assurances it would handle the modification, Polite reasonably relied on the Division to assist him in seeking modification.

Polite is pro se and has been since this action began. Polite has always complied with the Division's instructions. Unlike the mother in *Blackwell v. Fulgum*, 375 S.C. 337, 652 S.E.2d 427 (Ct.App.2007), he did not unilaterally reduce his support payments and continued to pay the full amount of his support obligation. Judge Woods correctly observed if Polite unilaterally reduced his support obligation like the mother in *Blackwell*, he may have successfully reduced his support obligation earlier because the family court would have likely ordered him to appear on a rule to show cause. In fact, Polite was not able

to have his support obligation reduced until two years after his oldest child turned eighteen. Furthermore, Judge Woods also noted because Polite continued to pay the full amount of his support obligation his other two children were assured of receiving the appropriate amount of support. I believe Polite has suffered a serious injustice because he reasonably relied on the Division's assurances.

I do not believe section 63–17–310 of the South Carolina Code (2010) precluded the family court from retroactively reducing Polite's support obligation. In *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992), the supreme court held section 63–17–310 does not bar a retroactive child support modification in special circumstances where refraining from modification would result in a serious injustice. Like in *Harris*, refraining from modification here results in a serious injustice. The Division took it upon itself to process Polite's request and assured him it would handle the matter. As an agency of the State it assumed responsibility and Polite relied upon the Division taking the action it assured him it would. Although pro se litigants are not entitled to special treatment, the Division was aware of Polite's reliance and failed to inform him of the proper way to seek modification.

I agree with the majority that a phone call is not sufficient to meet the standard for notifying the Division of a request to seek modification in section 63–17–830(A) of the South Carolina Code (2010). However, where an agency of the State, tasked with administering a statute, assures a person seeking access to justice that it will assist in properly complying with that statute, it is a serious injustice to allow that agency to use the statute as a shield to protect itself against its failure to follow through on its promise.

Judge Woods held two thorough hearings on this matter, determined the credibility of the witnesses, weighed all the evidence, and determined Polite "should not be punished for following the procedures of the Division and the delay that [that] caused." Although Judge Woods acknowledged under normal circumstances it may be improper to give Polite credit, he recognized the delay of "bureaucracy at work" created special circumstances in Polite's case and acted accordingly.

For these reasons, I would affirm the family court's decision to credit Polite the amount he over paid from July 1, 2006.