602 S.E.2d 729

**In the Interest of MICHAEL H., a minor under the age of seventeen years, Respondent.**

**No. 25529.**

Supreme Court of South Carolina.

Heard July 23, 2002.
Decided Sept. 16, 2002.
Reheard Dec. 3, 2002.
Refiled Aug. 30, 2004.
Rehearing Denied Oct. 6, 2004.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney General Melody J. Brown, all of Columbia, for Petitioner.

Tara D. Shurling, of Columbia, for Respondent.

J. David Flowers, of Greenville, and Gregg E. Meyers, of Charleston, both for the South Carolina Victim's Assistance Network, Amicus Curiae.

Justice BURNETT:

The State petitioned for review of the Court of Appeals' decision reversing Michael H.'s ("Respondent") juvenile conviction for criminal sexual conduct ("CSC") with a minor. We issued an opinion in this case in September 2002. *In the Interest of: Michael H., a minor under the age of seventeen years,* Op. No. 25529, 2002 WL 31051575 (S.C. Sup.Ct. filed September 16, 2002). Subsequently, we granted the State's petition for rehearing and a motion by the South Carolina Victim's Assistance Network to file an amicus brief. After rehearing this case, we withdraw our previous opinion and substitute this opinion.

## FACTUAL/PROCEDURAL BACKGROUND

Respondent was charged, by juvenile petition filed in Lexington County family court, with CSC in the first degree, kidnapping, and CSC with a minor. Respondent is the complainant's uncle, although he is only eight years older than the complainant. At the time of the alleged assault, Respondent was twelve or thirteen years old and the complainant was four

or five years old. Due to premature birth and complications, Respondent is developmentally impaired and exhibits a maturity level below others his age.[1] The complainant often spent time at Respondent's house (the home of complainant's paternal grandmother) where Respondent, his younger brother, and complainant played together and also took baths and showers together when complainant spent the night.[2] It was during one of these showers that the complainant claimed Respondent "raped" him.

The allegation arose in March 1999, in response to a story on the local news about a man arrested for indecent exposure. The complainant's mother testified the complainant saw the report and asked her why the man had "robbed" the children. The mother responded that the man had not "robbed" the children but had "raped" the children, and then explained to her son what rape was. The complainant's mother testified she told her son that rape of a boy "would be if someone was to touch him in an area that was covered by his swimsuit or his underwear, if someone was to touch his penis or play with his penis, or someone may try and stick [his] penis or something into his behind." Upon hearing this explanation, the complainant's mother said her son's expression changed, and he told her, "well, [Respondent's] done that to me before."

Complainant's mother then testified she asked her son when and where this happened, and he responded it had happened a while ago when he was in the shower with Respondent. Complainant's mother called her mother-in-law, Respondent's mother, to inform her of her son's accusation. Respondent spoke with complainant's mother, and denied ever having done anything like that to the complainant.

The complainant's mother filed a report with the police and took complainant to the Lexington County Children's Center

---

1. Respondent's verbal IQ is 84 (just below average), but his performance IQ lags behind at 70, indicating he has a learning disability. His counselor stated he did not learn like other kids and experienced delays in gross motor development as he grew up.

2. Respondent's mother (victim's grandmother) testified the door to the bathroom always remained open when the boys were bathing, and she checked in on them frequently, remaining in earshot continuously during their baths and showers.

where a rape protocol was performed and counseling began. The doctor performing the rape protocol found no evidence of sexual assault but testified this was not unusual with anal rape after significant time had passed. Complainant's counselor, Dr. Lake, a clinical psychologist, testified she believed Respondent had sexually assaulted victim.[3] During cross-examination of Dr. Lake, Respondent's counsel discovered he had not received notes from the complainant's last four sessions with Dr. Lake. Respondent asked the judge for time to review them and then completed his cross-examination. In these last four sessions, complainant reported he had been hearing voices in his head for some time. Complainant told Dr. Lake he began hearing the voices of two men on his fourth birthday, and they continued until a month or so before trial. Complainant told Dr. Lake the voices told him to say mean things to his friends and to hurt them, and that the voices told him he should have raped Respondent like Respondent had raped him.

Dr. Lake thought the voices might be auditory hallucinations and suggested to complainant's mother that he see a physician or a psychiatrist for diagnosis or treatment. Dr. Lake's notes reflected, however, that the voices stopped shortly before trial. Dr. Lake attributed this change to medication complainant began taking for attention-deficit and hyperactivity. The complainant never saw a physician or a psychiatrist about the voices.

Prior to the hearing, Respondent filed a motion to have complainant submit to a psychological evaluation. Apparently that motion was denied. Following Dr. Lake's testimony, Respondent moved again to have complainant submit to a psychological evaluation based on the revelation that complain-

---

3. Respondent's counselor, John Higgins, certified as an expert in the field of sex offender risk assessment, testified he had counseled Respondent in twenty sessions during which Respondent had consistently denied sexual contact with the victim. Mr. Higgins testified, based on his extensive experience with sex offenders, that he did not believe Respondent had any sexual contact with the victim. He explained that Respondent did not fit the profile for a sex offender and in fact was naïve about sex and the sexual function of his own body parts. Further, Mr. Higgins testified that Respondent had admitted other serious wrongdoing, such as calling in a bomb threat and stealing earrings, but had consistently denied any sexual contact with the victim.

ant had been hearing voices during the period of time he alleged the assault occurred. That motion was denied. Respondent's counsel also moved to have the complainant's testimony stricken as incompetent, based on the report of hearing voices. That motion was denied as well.

At trial, complainant testified Respondent raped him, explaining, in his own words, that Respondent "stuck his penis up my butt." Respondent also testified at trial and denied he had sexually assaulted the complainant in any way.

The trial judge granted Respondent's motion for directed verdict on the first degree CSC and kidnapping charges based on insufficient evidence but found Respondent guilty of CSC with a minor and ordered him committed to the Department of Juvenile Justice ("DJJ") until his twenty-first birthday. Respondent appealed and the Court of Appeals reversed and remanded for a new trial. *In the Interest of Michael H.,* Op. No. 02–UP–050 (S.C. Ct.App. filed January 18, 2002).

The State then filed a Petition for Rehearing and Suggestion for Rehearing En Banc. In response, Respondent filed a Petition for Appeal Bond or in the Alternative for Writ of Supersedeas. The Court of Appeals denied the Petition for Rehearing but granted Respondent's Petition for Appeal Bond.

Subsequently, the State petitioned this Court for a stay of the Court of Appeals' order granting bond and for supersedeas. Justice Moore denied the petition on behalf of the Court on the ground that the Court of Appeals' order was not appealable. On the same day, the family court set the conditions of the bond.

We granted the State's petition for a writ of certiorari to address the following issues:

I. Did the Court of Appeals err in holding that the family court judge abused his discretion in failing to order the victim to submit to a psychological examination?

II. Did the Court of Appeals act beyond its jurisdiction when it granted Respondent's Appeal Bond?

LAW/ANALYSIS

## I. Psychological Examination

The State argues the Court of Appeals erred in holding that the family court judge abused his discretion in failing to order the child victim to submit to a psychological examination. We disagree.

As a preliminary matter, the State argues that this issue is not preserved for review. The State asserts trial counsel's complaint was grounded in perceived discovery violations concerning the notes of Dr. Lake that had not been turned over to him. We disagree. Important information regarding the mental health of the child victim was uncovered in Respondent's cross-examination of Dr. Lake. At the close of the State's case, Respondent moved for a psychological evaluation based on this evidence. Obtaining the psychological evaluation, not pursuing the discovery violation, was the primary objective of Respondent's motion. "Now we'd move, for one, to have this child go through a psychological evaluation prior to continuing with this case because, based upon testimony we've heard and what we've been given today, it's highly likely that some voice told [victim] to say [Respondent] did this."

An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court. *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998). In other words, the trial court must be given an opportunity to resolve the issue before it is presented to the appellate court. Toal, Vafai, & Muckenfuss, *Appellate Practice in South Carolina*, at 66 (S.C. Bar 1999). In this case, Respondent's counsel raised the issue before trial, and then again during trial, at which point the trial judge denied the motion to have the victim submit to a psychological examination.

Whether a court has the authority to order a victim in a sexual assault prosecution to submit to a psychological examination is an issue of first impression in South Carolina. There is a split of authority in other jurisdictions as to whether a court has the power to order a victim to submit to a psychological examination and then, if so, under what circumstances.

■ Some jurisdictions give the trial judge discretion to order a victim to submit to a psychological evaluation when the defendant can show a compelling need for such an evaluation. The trial court's denial or grant of the defendant's request is then reversed only if the trial judge abused his discretion. *Pickens v. State,* 675 P.2d 665 (Alaska App.1984); *Koerschner v. State,* 116 Nev. 1111, 13 P.3d 451 (2000); *State v. Michaels,* 136 N.J. 299, 642 A.2d 1372 (1994); *Forbes v. State,* 559 S.W.2d 318 (Tenn.1977); *State v. Delaney,* 187 W.Va. 212, 417 S.E.2d 903 (1992).[4] In Delaney, the West Virginia Supreme Court adopted factors for the trial judge to consider in determining whether defendant had demonstrated a compelling need. The factors are intended to assist the trial judge in weighing the defendant's need for the examination against the victim's right to privacy and include the following:

(1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

*Delaney,* 417 S.E.2d at 907. In *Delaney,* the trial judge denied the defendant's request for a psychological examination of the victims (three young girls). The supreme court affirmed because the defendant failed to present "any reason, compelling or otherwise, to justify the examination." *Id.*

Other courts have taken the position that compelling a victim to submit to a psychological examination violates the public policy designed to protect the victim's right to privacy and to prevent further trauma to the victim. *People v.*

---

4. The precise test developed by each different court to determine when a psychological examination of a victim is warranted varies from case to case. The New Jersey court, for example, discussed the various ways a child's testimony could become "tainted" by interview tactics and adult influence, and held that the defendant bears the initial burden of showing *some* evidence that the victim's statements were the product of suggestive or coercive interview techniques. *Michaels,* 136 N.J. 299, 642 A.2d 1372. If the defendant meets that burden, a pretrial "taint" hearing is held in which the defendant can offer testimony of experts to counter the state's experts' testimony. *Id.*

*Espinoza,* 95 Cal.App.4th 1287, 116 Cal.Rptr.2d 700 (2002);[5] *State v. Horn,* 337 N.C. 449, 446 S.E.2d 52 (N.C.1994); *State v. Looney,* 294 N.C. 1, 240 S.E.2d 612 (1978). The North Carolina Supreme Court considered many of the same factors as the *Delaney* court, including the conflicting interests of the defendant and victim, before concluding that "'the possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are *outweighed* by the resulting invasion of the witness' right to privacy and the danger to the public interest from discouraging victims of crime to report such offenses.'" *Horn,* 446 S.E.2d at 53, (quoting *Looney,* 240 S.E.2d at 627) (emphasis added).[6] The court commented further, "in balancing the rights of the victim and the defendant, . . . 'zealous concern for the accused is not justification for a grueling and harassing trial of the victim.'" *Id.*

Although the North Carolina Supreme Court raises valid concerns in *Horn,* a trial judge is vested with discretion to order a *child* complainant to submit to an independent psychological evaluation, and the proper exercise of this discretion, upon a showing of compelling need, sufficiently protects victims from unnecessary or traumatizing invasions of their privacy. The guidelines for evaluating the existence of compelling need, which were delineated by the West Virginia Supreme Court in *Delaney, supra,* safeguard child complainants from unnecessary intrusions into their privacy, while also protecting a defendant's right to confront his accuser. We

---

5. The California Supreme Court wrote the seminal case granting trial judges discretion to order psychological evaluations of a victim upon a defendant's showing of compelling need in sexual assault cases. *Ballard v. Superior Court,* 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838 (1966). California courts adhered to this rule until 1980 when the legislature prohibited psychiatric examinations of complaining witnesses in sex crime cases. Cal. Pen.Code Ann. § 1112 (2002). The opinions cited in support of a trial court's discretion to order psychiatric examinations of sexual assault victims based on showing of compelling need are not based on the California case law.

6. In *Looney,* the North Carolina court held that the trial judge has no discretionary power to require a victim to undergo psychiatric examination before being permitted to testify. The *Looney* court found that to do so would be "a drastic invasion of the witness' own right of privacy" and "in and of itself, humiliating and potentially damaging to the reputation of the victim." 240 S.E.2d at 626.

adopt these guidelines, recognizing the serious and significant competing interests presented in this case and similar cases involving child victims. In such cases, a trial judge is, and must be, vested with broad discretion in the conduct of trial. The judge is required to weigh competing interests to ensure the truth of a matter is brought to light and justice to all parties before the court is served. An absolute bar to the exercise of judicial discretion to consider an order for a psychological evaluation of child complainants ignores the necessary balance which must be sought between a complainant's privacy rights and a defendant's right to a fair trial.

We disagree with the *Horn* reasoning supporting the North Carolina Supreme Court's opinion absolutely barring trial judges from exercising their discretion in determining whether a psychological evaluation of a child sexual assault complainant is appropriate.

In *Horn*, the North Carolina Supreme Court recites three primary concerns in support of its decision to absolutely bar trial judges from exercising judicial discretion in determining whether a psychological evaluation of a child sexual assault complainant is appropriate. First, the court suggests the negative impact of forcing a complainant to submit to a psychological evaluation is *always* a concern that outweighs *any* potential benefits to a defendant. *Horn*, 446 S.E.2d at 53 ("the possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are outweighed by the resulting invasion of the witness' right to privacy . . . .") (citing *Looney, supra*). This is a sweeping generalization. Where the complainant and the perpetrator are often the only two witnesses to a sexual assault, fundamental fairness dictates a defendant be entitled to request a psychological evaluation of a child witness where there is *compelling* reason to question the complainant's psychological status. A child complainant who is incompetent to testify may not have the capacity to give an accurate account of the facts. Cases involving child victims present special concerns that weigh in favor of allowing judicial discretion to order psychological evaluations.[7]

7. Jeffrey P. Bloom, *Post–Schumpert Era Independent Interviews and Psychological Evaluations of Child Witnesses,* July/Aug. S.C. Law. 40

Second, *Horn* suggests the invasion of an individual victim's privacy by a psychological examination, and the danger such a practice would further discourage already hesitant victims from reporting sex crimes, weighs against a trial judge exercising judicial discretion to order psychological evaluations in such cases. *Horn,* 446 S.E.2d at 53 ("the possible benefits to an innocent defendant ... are outweighed by ... discouraging victims of crime to report such offenses and other potential witnesses from disclosing their knowledge of them") (citing *Looney, supra*). The North Carolina Supreme Court's reasoning is unconvincing for two reasons. First, the *Delaney* factors set forth strict guidelines for the trial judge to consider in determining whether compelling need exists. These factors weigh in favor of complainants and thereby suggest judges would rarely order psychological evaluations. Therefore, it is unlikely the rare occasions where judges do order psychological evaluations would strongly discourage victims from reporting sex crimes. Second, it is highly unlikely the victim of a sex crime truly considers well in advance of trial whether to *report* a sex crime because the court may possibly order a psychological evaluation. This is especially true when the complainant is a child. It is highly improbable a child complainant would be so cognizant of the judicial process as to even consider the possibility of a judicially ordered psychological evaluation.

Finally, the North Carolina Supreme Court further supports its absolute bar on judicial discretion by suggesting the defendant's right to a fair trial is sufficiently protected by the trial judge allowing the defendant to submit evidence rebutting the complainant's mentally deficient status. *Horn,* 446 S.E.2d at 54. This assertion provides scant support for denying trial judges' discretion to consider ordering psychological evaluations of complainants. In particular, cross-examination of a complainant who is incompetent to testify, a condition that could be established through a psychological evaluation, would be wholly ineffective in protecting a defendant's right to a fair trial. A complainant who is incompetent to testify may not

(July/Aug.1998) (arguing the State has an evidentiary advantage that amounts to a violation of due process when the State is allowed an opportunity to evaluate a child witness, but the defense is not).

fully understand or convey the implications of his or her psychological condition on cross examination.

We recognize the recent trend of protecting the rights of victims as articulated by South Carolina's General Assembly.[8] We are completely in accord with these protections afforded victims of crime. However, a victim's rights will not be compromised where *compelling need* is the standard for ordering psychological evaluations of child complainants. Therefore, no public policy of this State is violated by the proper exercise of judicial discretion to consider the need of such evaluations to meet the ends of justice.

■ Turning to the present case, Respondent's counsel offered the questionable mental health of the *child* victim as the primary reason he sought a psychiatric evaluation of the victim. Specifically, Respondent's counsel cited the child victim's admission of hearing voices in his head that told him to say and do mean things to his friends as justification for compelling the victim to undergo a psychiatric examination. Examined in light of the *Delaney* factors, the victim's very young age (four at the time of the alleged assault and six at trial), the fact that the victim was undergoing counseling, and spoke freely of the incident (indicating he would not be further traumatized by another examination), and the fact the victim's counselor testified victim was hearing voices during the year

---

8.  S.C. Const. art. I, § 24, provides that victims have the right to be free of intimidation, harassment, or abuse throughout the criminal and juvenile justice process. The proper exercise of judicial discretion based on compelling need could hardly be considered intimidation, harassment, or abuse in our justice system.

S.C.Code Ann. § 16-3-657 (2003), provides that the testimony of a victim in a criminal sexual conduct prosecution need not be corroborated. This provision fully supports the exercise of judicial discretion in considering psychological evaluations. Where one can be convicted on uncorroborated testimony, it is imperative that his accuser be competent to testify.

S.C.Code Ann. § 16-3-659.1 (2003), bars evidence of a victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct under most circumstances. While the statute clearly reflects the General Assembly's intent to protect victims of sexual assault, the proper exercise of judicial discretion in considering and ordering a psychological evaluation of a complainant, as prescribed by *Delaney*, does not contradict this protective provision.

when victim alleged the assault occurred, the judge would have been within his discretion to order the victim to submit to an independent psychological examination.

Considering these circumstances, particularly the evidence regarding the victim's possible auditory hallucinations, we affirm the Court of Appeals' order reversing Respondent's adjudication and remanding for a new trial. We modify the order by limiting the trial judge's discretion to order a psychological examination to cases in which a child is the complaining victim. Upon remand, the court should consider any motion by Respondent for a psychological examination of the child victim in light of the Court's resolution of this novel issue, applying the analysis we set forth in this case.

## II.  Appeal Bond

■  The State argues the Court of Appeals acted beyond its jurisdiction in granting Respondent's motion for bond pending his appeal. We disagree.

South Carolina Code Ann. § 14–8–200(a) (Supp.2003) states that the Court of Appeals shall have the same authority to grant petitions for bail as this Court would have in a similar case. Under South Carolina Code Ann. § 18–1–90 (1985), bail shall be allowed to the defendant in all cases in which the appeal is from the trial, conviction, or sentence for a criminal offense.

Rule 221(b), South Carolina Appellate Court Rules ("SCACR"), provides that the Court of Appeals retains jurisdiction until this Court grants or denies a petition for certiorari.

> Where a petition for rehearing has been denied, the Court of Appeals shall not send the remittitur to the lower court until the time to petition for a writ of certiorari under Rule 226(c) has expired. If a petition for writ of certiorari is filed, the Court of Appeals shall not send the remittitur until notified that the petition has been denied. If the writ is granted by the Supreme Court, the Court of Appeals shall not send the remittitur.

Rule 221(b), SCACR (2002).

The State filed a Petition for Rehearing on February 4, 2002, before the expiration of the fifteen days allotted in Rule

221(a), SCACR. On February 7, the Respondent filed a Petition for Appeal Bond pending the outcome of the State's appeal from the Court of Appeals' decision. The Court of Appeals denied the State's Petition for Rehearing on February 21, 2002, and granted Respondent's Petition for Appeal Bond on the same day. The Court of Appeals had not returned the remittitur when it granted the Respondent's Petition for Appeal Bond, and this Court had not granted certiorari over the case yet. Therefore, we find the Court of Appeals retained jurisdiction over Respondent's case and acted within its authority when it granted Respondent's petition.

■ Additionally, the State argues the Court of Appeals abused its discretion in admitting Respondent to bail by failing to consider what guidelines would be necessary to attempt to prevent Respondent from violating bond. We disagree.

■ The factors to be considered in admitting a person to bail pending appeal include the probability of reversal, the nature of the crime, the possibility of escape, and the character and circumstances of the appellant. *Nichols v. Patterson*, 202 S.C. 352, 25 S.E.2d 155 (1943). The Court of Appeals set the amount of Respondent's bond ($1,000) and then remanded the matter to the family court of Lexington County for that court to set the conditions of his bond. The family court set numerous restrictive conditions on Respondent's bond, including prohibiting Respondent from having unsupervised contact with children younger than twelve, and requiring him to take his prescribed medications, attend school, be under the supervision of his mother, school officials, or other responsible adult *at all times*, and to abide by a 6:00 p.m. curfew. In our opinion, the conditions set by the family court demonstrate that the guidelines for bail were considered before Respondent was released on bail.

## CONCLUSION

For the foregoing reasons, we affirm as modified the Court of Appeals' decision reversing Respondent's adjudication and granting Respondent a new trial. In addition, we affirm the Court of Appeals' decision denying the State's request to

declare the appeal bond issued by the Court of Appeals null and void.

WALLER and PLEICONES, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which MOORE, J., concurs.

Chief Justice TOAL:

I respectfully dissent because I believe that the special rule adopted by the majority—giving trial judges the discretionary authority to order child victims in sexual abuse cases to undergo psychological evaluations—undermines existing trial procedures used to evaluate witness credibility and contravenes the recent statewide movement to protect the rights of the sexually abused. Therefore, I believe that under no circumstances should a trial judge have the authority to order child victims of sexual abuse to undergo psychological evaluations. Accordingly, I would reverse the portion of the court of appeals' decision holding that the family court judge abused his discretion in failing to order the child victim to submit to a psychological evaluation.

Of the various tests applied around the country to determine whether it is within the trial judge's discretion to order child victims to submit to a psychological examination in sexual abuse cases, the majority has chosen to adopt the factors used by the West Virginia Supreme Court in *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992). These factors, as follow, are intended to guide the trial judge in determining whether to order a psychological examination:

> (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

*Delaney*, 417 S.E.2d at 907.

I do not support the adoption of these factors; rather, I agree with North Carolina Supreme Court's analysis in *State v. Horn*, which led to the conclusion that "a trial judge does

not have the authority to order a victim to submit to psychological examination, even when the victim's mental status is an element of the crime charged." 337 N.C. 449, 446 S.E.2d 52, 54 (1994). In *Horn*, the court considered many of the same factors as the *Delaney* court but reasoned that " 'the possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are *outweighed* by the resulting invasion of the witness' right to privacy and the danger to the public interest from discouraging victims of crime to report such offenses.' " *Id.* at 53 (quoting *State v. Looney*, 294 N.C. 1, 240 S.E.2d 612, 627 (1978)) (emphasis added).[9] On balance, the court found that " 'zealous concern for the accused is *not justification for a grueling and harassing trial of the victim.*' " *Id.*

I agree with the North Carolina court and find support for my view in practical and policy considerations. First, the invasion into an individual victim's privacy by such an examination and the danger that such a practice would discourage already hesitant victims from reporting sex crimes, adequately support, in my view, a decision forbidding trial judges from having the authority to order psychological examinations in these cases.

Second, the trial process already contemplates the challenges associated with witness credibility and overall fairness, and both trial judges and attorneys already have several alternatives at their disposal to ensure that defendants receive a fair trial. Most importantly, perhaps, is the trial judge's power to admit or deny the admission of evidence already gathered concerning the witness's mental health status. Or as a last resort, the trial judge may dismiss the case if the defendant's right to a fair trial has been imperiled.

Third, a defendant's right to a fair trial is sufficiently protected through the right to cross-examine both the testifying victim and all other witnesses presented by the State. A

---

9. In *Looney*, the North Carolina court held that the trial judge has no discretionary power to require a victim to undergo psychiatric examination before being permitted to testify. To require victims to undergo such evaluations, the court reasoned, would be "a drastic invasion of the witness' own right of privacy" and "in and of itself, humiliating and potentially damaging to the reputation of the victim." 240 S.E.2d at 626.

well-prepared cross-examination has the potential to thorough-ly undermine a witness's credibility. Alternatively, the defense may call other witnesses to attack the victim's credibility. Finally, the defense may present its own expert witnesses to rebut evidence concerning the victim's mental health status.

Fourth, as a practical matter, the majority's decision has the unanticipated consequence of creating a "trial within a trial." In other words, if a judge determines—after weighing the Delaney factors as advocated by the majority—that an examination should be ordered, the "primary trial," the trial against the alleged abuser, is effectively put on hold while the "secondary trial," the examination of the victim to ascertain the victim's mental status, is conducted. In this "secondary trial," victims assume the role of the accused in the primary case. This additional process turns our notion of the adversarial process on its head by temporarily relieving the State of its constitutional burden of proof—to prove the defendant guilty beyond a reasonable doubt—and creating, instead, a hearing on the victim's mental capacity.

Fifth, the General Assembly and people of South Carolina have actively sought, in recent years, to protect the rights of victims, particularly victims of sexual assault. See Victims' Bill of Rights, S.C. Const. art. I, § 24 (providing that victims have the right to be free from intimidation, harassment, or abuse throughout the criminal and juvenile justice process); S.C.Code Ann. § 16–3–657 (Supp.2002) (providing that the testimony of a victim in a criminal sexual conduct prosecution need not be corroborated); S.C.Code Ann. § 16–3–659.1 (Supp.2002) (barring evidence of victim's sexual conduct, opin-ion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct in prosecutions for criminal sexual conduct under most circumstances). Each of these provisions illustrates the concerted movement toward protection of the victim in criminal sexual conduct cases. I believe that the majority's decision undermines these efforts and the intentions supporting these policy decisions.

Sixth, the adoption of the Delaney factors represents a radical change in the criminal trial procedure in this state. Evaluating witness credibility is an important function re-served for judges and juries. Allowing judges to order victim

evaluations in sexual abuse cases undermines the role of judges and juries and vests a great deal of power in the psychologists who perform the evaluations.

Finally, that the ordering of psychological evaluations will be a rare occurrence, as the majority posits, is of little consolation to the victims who are forced to undergo such evaluations. Moreover, I respectfully find the majority's argument that child victims, in particular, will not be dissuaded from reporting abuse since they are too young to contemplate the hurdles ahead, unpersuasive. To the contrary, a child victim's inability to understand the adversarial process further justifies my position on this issue, a position that I believe is consistent with the protective nature of victims' rights legislation in South Carolina.

In conclusion, I do not support the majority's decision giving trial judges discretion to order a criminal sexual conduct victim to submit to a psychological examination. Given that our legal system is already designed to ensure fairness for all those who enter the courtroom and that the special rule adopted today runs afoul of public policy in this state, I would REVERSE the portion of the court of appeals' decision holding that the family court judge abused his discretion in refusing to order a psychological evaluation of the victim. I agree, however, with the majority's decision on the appeal bond issue.

MOORE, J., concurs.