683 S.E.2d 286

**John S. DIVINE, IV, Respondent,**

**v.**

**Josette A. ROBBINS, Appellant.**

**No. 4600.**

Court of Appeals of South Carolina.

Heard June 9, 2009.
Decided July 28, 2009.
Rehearing Denied Sept. 17, 2009.

24

K. Douglas Thornton, of Conway, for Appellant.

Martha L. Hamel, of Pawleys Island, for Respondent.

GEATHERS, J.:

Josette Robbins (Mother) appeals the family court's decision to award John Divine (Father) sole custody of their six-year-old child (Daughter) because it was against Daughter's best interests. Mother asserts the family court placed undue reliance on Father's expert witness and erred in several evidentiary rulings, which resulted in the family court making improper credibility determinations regarding the parties and their witnesses. Mother also contends her counsel's ineffective representation prevented her from having a meaningful final hearing in violation of her due process rights. We affirm.

## FACTS

At present, Mother is 40 years old and Father is 42 years old. Mother and Father were involved in a romantic relationship from 1998 until 2002 but never married or lived together. The parties first met when Mother was a waitress at one of the restaurants that Father owns in the Myrtle Beach area.[1] While Mother and Father stated they were initially in love, their relationship progressively deteriorated due to Mother's erratic behavior, jealousy issues, and physical violence towards and harassment of Father. As a result of Mother's behavior, Father ended the relationship in February 2002. Despite the break-up, the parties still maintained contact, and in July 2002, Mother became pregnant. Daughter was born on May 4, 2003. In addition to Daughter, each party has one daughter from another relationship.

At the final hearing, Mother testified that Father initially denied being Daughter's father and urged Mother to have an abortion on several occasions. Mother also stated that Father provided no emotional support during her pregnancy and did not provide any financial support until several months after Daughter's birth. In contrast, Father stated that while he was initially uncertain whether Daughter was his child due to the status of his relationship with Mother when she became pregnant, he readily accepted responsibility for Daughter as soon as a paternity test identified him as Daughter's father.

To provide financial support, Father paid Mother's medical bills; purchased baby furniture for Mother's home; bought maternity clothes for Mother; sent Mother a $3,000 check for Daughter in July 2003, which Mother tore up and mailed back to Father; and sent Mother a $4,000 check approximately six months after Daughter's birth for her support, which Mother accepted. Despite Father's earnest efforts to be involved in Daughter's life, Mother allowed Father to visit Daughter only in Mother's home and at times convenient to Mother. Mother

---

1. Throughout this litigation, Father has been the president of the Divine Dining Group, a corporation with numerous restaurants and other food and beverage establishments in the Myrtle Beach area. Mother is a college graduate. For the majority of the parties' relationship, Mother managed one of Father's liquor stores, in which Mother contends she has partial ownership. At the time of the final hearing, she was seeking employment and planning to attend real estate school.

testified that she wanted Father to visit Daughter in her home because Daughter was a premature baby and Father had no previous experience with small children. Father claimed that Mother told him the only way he could see Daughter on a regular basis was if he agreed to marry Mother. Mother, on the other hand, testified that she initially attempted to establish a regular visitation schedule with Father, but Father was unwilling to come on set days because his schedule changed often due to his business.

Father initially attempted to resolve the custody and visitations issues directly with Mother. When this was unsuccessful, Father employed an attorney in October 2003 to contact Mother to establish a regular visitation schedule and to offer $1,400 per month in child support. In response, Mother told Father that she would only permit regular visitation of Daughter if ordered to do so by a judge. Mother then denied Father visitation with Daughter for a period of five weeks in an effort to "push him to come up with a schedule."

As a result of the visitation issues, Father filed the instant action on November 17, 2003, requesting joint custody of Daughter, visitation, the establishment of child support obligations, the right to conduct discovery, and mutual restraining orders. On December 18, 2003, the parties agreed to give Mother temporary custody of Daughter pending a final hearing on the merits and specified visitation arrangements and child support. The following day, Mother filed an answer and counterclaim, requesting custody, child support, and attorney's fees.

As time passed, Father became increasingly concerned about Mother's psychological state and its effect upon her ability to parent and care for Daughter. Consequently, on May 19, 2004, Father moved to amend his pleadings to request sole custody of Daughter and sought a court-ordered psychiatric evaluation for Mother and a court-appointed guardian ad litem for Daughter. In response, the family court permitted Father to amend his pleadings to request sole custody of Daughter and confirmed the parties' choice of Melissa Emery as Daughter's guardian ad litem.[2] The family court did not

2. On July 2, 2005, less than three months prior to the final hearing, Mother filed a motion seeking removal of Ms. Emery as guardian ad

require Mother to submit to a psychiatric evaluation at that time.

On June 21, 2004, Mother's counsel filed a motion to be relieved as counsel, citing his inability to effectively communicate with Mother. The family court then granted Mother's first of three requests to continue the final hearing originally set for November 4, 2004 in order to find substitute counsel. To accommodate Mother, the family court rescheduled the final hearing two more times prior to the final hearing.

In March 2005, Father filed a motion to compel discovery, and he again requested a psychiatric evaluation for Mother. On April 18, 2005, the family court granted Father's request to compel discovery and ordered Mother to submit to a psychiatric evaluation at Father's expense. On June 22, 2005, C. Barton Saylor, PhD., a licensed clinical psychologist and diplomate in forensic psychology, conducted a psychiatric evaluation of Mother and testified as to his conclusions at the final hearing.

The final seven-day hearing took place on September 12 and 15, 2005, and then reconvened on October 13, 14, 25, 27, and 28, 2005. In its thirty-two page final order, the family court made numerous findings in support of its decision to award sole custody of Daughter to Father. Although the family court acknowledged that joint custody was a permissible alternative, based on the continued hostilities between the parties and the lack of Mother's ability to maintain a cooperative co-parenting relationship with Father, the family court found Daughter's best interests would be served by granting Father sole custody of Daughter. This appeal followed.

## ISSUES ON APPEAL

Mother presents the following arguments as to why the family court's decision to award sole custody to Father was erroneous:

---

litem, alleging a conflict of interest and the appearance of impropriety. The family court found that Mother failed to substantiate either of these claims, but to ensure that the final hearing focused on the best interests of Daughter and not on any perceived conflict of interest, the family court substituted Carroll Padgett as guardian for Daughter.

(1) The family court's award of custody was against Daughter's best interests.

(2) The family court placed undue reliance on Father's expert witness, whose testimony was incomplete and biased in favor of Father.

(3) The family court erred in several evidentiary rulings, which prevented Mother from presenting complete and probative evidence at the final hearing.

(4) The family court's undue reliance on Father's expert witness and improper evidentiary rulings resulted in the family court making improper credibility determinations regarding the parties and their witnesses.

(5) The family court failed to provide Mother with a meaningful final hearing in violation of her substantive due process rights due to her counsel's lack of preparation and ineffective representation at the final hearing.

## STANDARD OF REVIEW

On appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly*, 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994). However, this broad scope of review does not relieve the appellant of the burden of convincing us that the family court committed error. *Nasser–Moghaddassi v. Moghaddassi*, 364 S.C. 182, 189–90, 612 S.E.2d 707, 711 (Ct.App.2005). Nor are we required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimonies. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

With respect to custody determinations, the appellate courts have consistently shown deference to the family court in electing between fit parents. *Altman v. Griffith*, 372 S.C. 388, 393, 642 S.E.2d 619, 621 (Ct.App.2007). "In gauging between fit parents as to who would better serve the best interests and welfare of the child in a custodial setting, the family court judge is in a superior position to appellate judges who are left only to review the cold record." *Altman*, 372 S.C. at 393, 642 S.E.2d at 622. For this reason, custody decisions

are matters left largely to the discretion of the family court. *Stroman v. Williams*, 291 S.C. 376, 378, 353 S.E.2d 704, 705 (Ct.App.1987).

## LAW/ANALYSIS

### I. Best Interests of Daughter

Mother argues the family court's decision to grant Father sole custody of Daughter was against Daughter's best interests. We disagree.

In all child custody controversies, the controlling considerations are the child's welfare and best interests. *Cook v. Cobb*, 271 S.C. 136, 140, 245 S.E.2d 612, 614 (1978). In determining custody, the family court "must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child." *Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996). Because all relevant factors must be taken into consideration, the family court should also review the "psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational aspects" of the child's life. *Id.* In other words, the totality of circumstances unique to each particular case "constitutes the only scale upon which the ultimate decision can be weighed." *Parris v. Parris*, 319 S.C. 308, 310, 460 S.E.2d 571, 572 (1995).

In the case at hand, the family court clearly considered the totality of circumstances in determining that Daughter's best interests would be served by awarding custody to Father. In a very thorough final order, the family court made numerous in-depth findings to support its decision to award custody of Daughter to Father, including: Daughter's welfare, the parties' history of domestic violence, the parties' conduct, Dr. Saylor's expert opinion, the fitness of each party to handle Daughter's physical and emotional needs, the willingness of each party to facilitate the relationship between Daughter and the other parent, the financial and physical resources of the parties, the stability of each party's home, the amount of time each party has to spend with Daughter, each party's family network of support, child care availability, the loving relationship between Daughter and each party, religious training,

primary caretaker status, immoral conduct of each party, the guardian ad litem's opinion, and each party's respect for court orders. The family court's in-depth findings show that it properly considered the fitness of each parent and the relevant factors that would affect Daughter's best interests in making its custody determination. *See Pirayesh v. Pirayesh,* 359 S.C. 284, 296, 596 S.E.2d 505, 512 (Ct.App.2004) ("When determining to whom custody shall be awarded, the court should consider all the circumstances of the particular case and all relevant factors must be taken into consideration.").

The family court stressed that each party came before the court on equal footing, but after "[h]aving adequate opportunity to carefully consider all relevant factors relating to custody . . . the best interest of the child would be served by granting sole legal and physical custody to Plaintiff Father." (emphasis in original). *See Brown v. Brown,* 362 S.C. 85, 90, 606 S.E.2d 785, 788 (Ct.App.2004) ("The paramount and controlling factor in every custody dispute is the best interests of the [child]."). Mother claims that "the pivotal issue [in determining custody] became who was to blame for the outbursts and altercations between the parties." However, the family court's order considered Mother's behavior and the tumultuous nature of the parties' relationship as only one of many factors in its decision, as is statutorily required in resolving custody issues. *See* S.C.Code Ann. § 63–15–40 (Supp.2008) (formerly S.C.Code Ann. § 20–7–1530) (stating that in making a decision regarding child custody, the family court must, in addition to other factors, give weight to evidence of domestic violence).

A majority of Mother's argument on appeal centers around the lengthy and dramatic history of the parties' relationship with little focus on why Mother is better suited to be Daughter's primary caretaker. While much of both parties' testimony at the final hearing focused on the parties' relationship, Mother has failed to sufficiently highlight evidence proving that the family court's award of custody to Father was contrary to Daughter's best interests. *See Jones v. Ard,* 265 S.C. 423, 426, 219 S.E.2d 358, 359–60 (1975) (finding that when both parties are fit and proper to have custody, the family court must make the election, and this Court must defer to its decision when the family court's findings and conclusions are supported by the record). Therefore, Mother has failed to

sustain her burden of convincing this Court that the family court did not consider the Daughter's welfare and best interests in its custody decision. *See Shorb v. Shorb,* 372 S.C. 623, 628, 643 S.E.2d 124, 127 (Ct.App.2007) ("The burden is upon the appellant to convince this Court that the family court erred in its findings of fact.").

## II. Dr. Saylor's Testimony

Mother asserts the family court abused its discretion by placing undue weight and reliance on Husband's expert witness, Dr. Saylor, because Dr. Saylor's testimony was biased and imbalanced. We disagree.

At the final hearing, Dr. Saylor testified as to his conclusions from his meeting with Mother. After being qualified as an expert in clinical psychology, Dr. Saylor stated that in his twenty-three years of practice, he had conducted over 1,500 parental capacity evaluations in cases when child custody was an issue. Dr. Saylor stated that Mother described herself as "pretty laid back," which was not consistent with his observations that she was "defensive, argumentative, and evasive." He also stated that she failed to provide information to him in a straightforward manner, and when he pointed out inconsistencies in her own statements, she became very defensive and accused Dr. Saylor of misunderstanding her. In concluding that Mother had a narcissistic personality disorder,[3] Dr. Saylor said that this disorder could be a liability to parenting because Mother was inclined to focus on how a situation affected her as opposed to Daughter. Additionally, he believed Mother was not open to honest self-exploration, refused to admit any legitimate problems, faults, or weaknesses, and tended to project responsibility for her own actions onto others.

---

**3.** According to Dr. Saylor's report, an individual diagnosed with Narcissistic Personality Disorder may exhibit the following: (1) a grandiose sense of self-importance; (2) a requirement of excessive admiration; (3) a sense of entitlement, i.e., an unreasonable expectation of especially favorable treatment or automatic compliance with expectations; (4) an interpersonal exploitativeness, i.e., a willingness to take advantage of others to achieve the individual's needs; (5) a lack of empathy; (6) an envy towards others or a belief that others envy the individual; and (7) arrogant and haughty behaviors or attitudes.

In reviewing Dr. Saylor's testimony at the final hearing, the family court stated that although it "by no means ... delegated any decision as to custody to any expert[,]" it was particularly concerned with Dr. Saylor's opinion that Mother " 'appeared to have no concept of how to maintain a cooperative co-parenting relationship with the father of her child and no motivation to develop a more cooperative relationship unless it was on her own terms.' " Further, the family court found these issues could interfere with Daughter's best interests based on Dr. Saylor's opinion that "[Mother] is likely to continue to maintain a hostile, suspicious, and provocative attitude when dealing with [Father], which may create drama and disturbance for their daughter and could lead to long-term emotional problems for the child."

Mother's argument concerns the question of credibility and the probative value to be placed upon Dr. Saylor's testimony. Resolving questions of credibility is the function of the family court judge who heard the witnesses' testimony. *Terwilliger v. Terwilliger*, 298 S.C. 144, 147, 378 S.E.2d 609, 611 (Ct.App.1989). Because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the family court's findings when matters of credibility are involved. *Shirley v. Shirley*, 342 S.C. 324, 329, 536 S.E.2d 427, 429 (Ct.App.2000). "This is especially true in cases involving the welfare and best interests of children." *Aiken County Dep't. of Soc. Servs. v. Wilcox*, 304 S.C. 90, 93, 403 S.E.2d 142, 144 (Ct.App.1991).

Mother alleges that Dr. Saylor's conclusions were "carefully constructed" to favor Father, but she has presented no credible evidence to substantiate this claim. Dr. Saylor stated that his conclusions and assessment of Mother's mental state were based on four specific tests that are customarily used and accepted in the clinical psychology field. Mother never objected to Dr. Saylor's qualification as an expert in clinical psychology or to the methods employed by Dr. Saylor in evaluating Mother's mental state. Furthermore, Dr. Saylor's conclusions could not have been influenced by Father as Dr. Saylor testified that he never spoke to or even met Father prior to the final hearing.

Dr. Saylor acknowledged that Father's attorney and Daughter's guardian ad litem provided him with witness affidavits prior to the evaluation, but he initially reviewed them only to determine whether there was any foundation for an interview. Dr. Saylor stated that his conclusions in his report were drawn from information provided to him directly by Mother at the evaluation. He specifically confirmed that it was "beyond the scope of [his] evaluation" to determine the accuracy of the witness affidavits, but they "at least appear[ed] to be the foundation that the concerns about [Mother's] behavior and temper were not simply the product of a series of manufactured claims by the father of her daughter."

Dr. Saylor's report and statements at the final hearing do not indicate a predisposed bias in favor of Father, but rather serve to substantiate his conclusion as to Mother's mental state. The family court, as the trier of fact, properly weighed Dr. Saylor's testimony against all the other evidence presented at the final hearing in determining the weight that his testimony should be afforded. *See Terwilliger*, 298 S.C. at 147, 378 S.E.2d at 611 (stating that the family court, as the fact finder, determines the weight to be given to testimony); *Altman*, 372 S.C. at 401, 642 S.E.2d at 626 (finding that because an expert's testimony was not the only evidence tending to establish that the mother was self-absorbed and self-pitying, the family court's consideration of the expert's testimony in conjunction with other evidence was proper in its decision to award custody of child to the father).

Mother also contends that Dr. Saylor's evaluation was imbalanced by design because Dr. Saylor failed to evaluate Father and failed to interview Daughter or any witnesses with personal knowledge of the parties' interactions. Despite this contention, Mother never attempted to request an evaluation of Father or to object to the accuracy of Dr. Saylor's evaluation of her based on Dr. Saylor not evaluating Father or interviewing other witnesses. Nor did she present any contrary rebuttal evidence of her own to refute Dr Saylor's conclusions. Furthermore, Dr. Saylor's failure to interview other witnesses did not compromise his evaluation of Mother because the purpose of Mother's court-ordered psychological evaluation was not to make a custody recommendation. As stated in his report, Dr. Saylor conducted the evaluation for

"the purpose of ... provid[ing] information regarding [Mother's] current psychological adjustment."

If the exclusive purpose of Dr. Saylor's interview had been to make a custody recommendation, the better practice would have been to interview Father; however, the failure to interview Father would not in itself be fatal. *See Terwilliger,* 298 S.C. at 147, 378 S.E.2d at 611 (refuting father's claim that the family court erred in its custody decision by giving undue consideration to the testimony of mother's expert witness, a clinical psychologist, despite psychologist not testing or communicating with the father). In sum, because it was the family court's duty to resolve credibility issues, the family court did not err in assessing the probative value of Dr. Saylor's testimony in its custody determination. *See Thompson v. Brunson,* 283 S.C. 221, 228, 321 S.E.2d 622, 626 (Ct.App.1984) (finding the family court was in the best position to assess the veracity of the testimony of witnesses).

### III. Evidentiary Rulings

Mother objects to several statements at the final hearing on the grounds that the admission of these statements was both erroneous and prejudicial. We disagree on all claims of error.

To warrant reversal based on the admission or exclusion of evidence, the complaining party must prove both error and resulting prejudice. *Altman,* 372 S.C. at 401, 642 S.E.2d at 626.

### A. Dr. Saylor's Qualifications

Mother first contends that the family court erroneously qualified Dr. Saylor as an expert in child speech developmental delay because (1) his resume fails to support this qualification; and (2) no notice was given to Mother that Dr. Saylor would be called as an expert in this field. We disagree.

While Mother objects to the family court recognizing Dr. Saylor as an expert on child speech developmental delays, Mother sets forth no argument or supporting authority to indicate how the family court's ruling was in error or how it prejudiced her at the final hearing. *See Hunt v. Forestry Comm'n,* 358 S.C. 564, 573, 595 S.E.2d 846, 851 (Ct.App.2004)

(holding that issues raised in a brief but not supported by authority are deemed abandoned and will not be considered on appeal); *Jenkins v. E.L. Long Motor Lines Inc.*, 233 S.C. 87, 94, 103 S.E.2d 523, 527 (1958) (stating that the trial court's ruling on the qualification of an expert would not be disturbed in the absence of an abuse of discretion and prejudice to the complaining party). Thus, this issue is deemed abandoned on appeal. *See* Rule 208(b)(1)(D), SCACR (requiring the citation of authority in the argument portion of an appellant's brief); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting that when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal).

Additionally, Mother's argument regarding notice is not preserved for review because she never objected to Dr. Saylor's testimony on this ground at the final hearing. *In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court."); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004) ("It is well settled that, but for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the trial court."). Even if Mother preserved this issue, she fails to set forth any argument as to how a lack of notice regarding the family court's qualification of Dr. Saylor as an expert in child speech developmental delay prejudiced her. *See Doe v. Doe*, 324 S.C. 492, 499, 478 S.E.2d 854, 858 (Ct.App.1996) (holding that appellant seeking reversal must show both error and prejudice).

### B. Guardian Ad Litem's Statements

Next, Mother argues the guardian ad litem's statement that Mother was "insanely jealous" was improper because she was neither qualified to give such an opinion pursuant to Rule 701, SCRE, nor was Mother provided with notice that the guardian would be testifying as an expert witness. We disagree.

At the final hearing, Daughter's guardian ad litem, Mr. Padgett, questioned the previous guardian ad litem, Ms. Emery, regarding her assessment of Mother's behavior to-

wards Father, specifically asking, "Would this be a fair statement to characterize [Mother's] anger problems or things that she has done as some woman who is insanely jealous over the father of her baby?" In response, Ms. Emery stated, "That would be fair." Mother's counsel did not interpose an objection. Father's counsel then followed up Mr. Padgett's questioning to Ms. Emery with the following: "Does it appear to be behavior that goes beyond insane jealousy?" In response, Mother's counsel objected that Ms. Emery was not qualified to comment beyond her opinion as to Mother's "insane jealousy." Despite counsel's objection, the family court permitted Ms. Emery to answer the question.

Ms. Emery's testimony was not required to be presented by an expert witness because her statement was within the range of permissible lay testimony. Pursuant to Rule 701, SCRE, lay witnesses are permitted to offer testimony in the form of opinions or inferences if the opinions or inferences are rationally based on the witness's perception, will aid the trier of fact in understanding testimony, and do not require special knowledge, skill, experience, or training. Ms. Emery's opinion regarding Mother's behavior was based on her personal interaction with Mother as Daughter's guardian and was probative in determining which parent was best suited to obtain custody of Daughter. *See State v. Douglas*, 380 S.C. 499, 502–03, 671 S.E.2d 606, 608–09 (2009) (finding that a witness did not need to be qualified as an expert in the field of forensic interviewing when the witness testified only as to her personal observations and as to her interview with the victim); *cf. Honea v. Prior*, 295 S.C. 526, 531, 369 S.E.2d 846, 849 (Ct.App.1988) (finding that a social worker was qualified to give an opinion as to the defendant's mental state despite not being a psychiatrist because she had adequate opportunities to observe and interview the defendant). Moreover, this Court is aware that the family court was free to accept or reject Ms. Emery's opinion as to whether Mother was "insanely jealous" based on its assessment of Ms. Emery's and Mother's testimony at the final hearing. *Davis v. Davis*, 356 S.C. 132, 135, 588 S.E.2d 102, 103 (2003) (stating that when reviewing a child custody order, this Court is mindful that the family court observed the witnesses and was in a better position to judge their credibility and assign comparative weight to the testimony).

Regarding Mother's argument that Father did not notify her of his intent to call Ms. Emery as an expert witness, Father was not required to notify Mother in this regard because Ms. Emery was not testifying as an expert witness. *But see* Rule 33, SCRCP (stating that a party may serve a written interrogatory upon another party to request identification of any potential expert witnesses whom the party proposes to use as a witness at trial); *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991) ("There is, however, a continuing duty to supplement responses with new information concerning the identity of persons having knowledge of discoverable matters and persons expected to be called as expert witnesses."). Mother never objected to Ms. Emery's testimony on this ground at the final hearing, thus it is not preserved for this Court's review. *See In re Michael H.*, 360 S.C. at 546, 602 S.E.2d at 732 ("An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court.").

### C. Father's statement

Mother next asserts that the family court erred in permitting Father to testify as to whether Father's personal observations were consistent with Dr. Saylor's testimony. We disagree.

Father's counsel asked Father on direct examination, "And how did [Dr. Saylor's] impressions in that report relate to your impressions of Josie?" Mother's counsel objected on the grounds that Father was not qualified as a forensic psychologist to testify on the accuracy or validity of Dr. Saylor's conclusions. The family court then instructed Father that he could testify as to his own impressions and feelings but not as to whether Dr. Saylor's report was valid. In turn, Father stated, "[The report] was extremely representative of what I have experienced and what I've had to—what I've been dealing with . . . ."

Father was in a position to testify as to whether his personal observations and experiences with Mother were similar to the conclusions in Dr. Saylor's report. His response was based on first-hand knowledge acquired during the parties' four-year tumultuous romance and continued interaction

following Daughter's birth. *See* Rule 602, SCRE (stating that a witness must have personal knowledge of a matter in order to testify about it). Father's statements were not of the nature that would require specialized knowledge such that he would need to be qualified as an expert before testifying because his opinion was rationally based on his perception of Mother as a result of their relationship. *See* Rule 701, SCRE (limiting a lay witness's testimony to opinions or inferences that (1) are rationally based on the witness's perception; (2) are helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) do not require special knowledge, skill, experience, or training). Consequently, the family court did not err in permitting Father to respond to this line of questioning.

### D. Aunt's Testimony

Mother argues the family court erred in limiting the testimony of Mother's sister-in-law, Leslie Caldwell (Aunt), at the final hearing because Aunt's statements were neither speculative nor outside the realm of testimony agreed upon during discovery. We disagree.

Daughter's guardian ad litem, Mr. Padgett, asked Aunt how Daughter would be affected if she was placed in Father's custody and taken away from Daughter's half-sister. In response, Father's counsel objected, arguing that Aunt's response would be speculative, and unless there was an expert witness to testify as to how Daughter would feel or react, it was outside the scope of permissible lay testimony. The family court sustained Father's objection, finding that her previous testimony did not indicate she had either the educational expertise or interaction with the parties to be able to testify on that issue.

Aunt's testimony was properly excluded as she had no personal knowledge of how Daughter's custody placement would affect Daughter. Daughter never lived with Aunt, and Aunt testified that she only saw Daughter three or four times a year for less than a week at a time. While Aunt clearly has a personal relationship with Daughter, she lacks the daily interaction and first-hand knowledge that is necessary to properly testify on how Daughter living with Father would

affect Daughter's relationship with her half-sister. *See* Rule 701, SCRE. Consequently, the family court did not abuse its discretion in limiting Aunt's testimony on this issue.

 Additionally, Mother's counsel did not proffer Aunt's testimony after it was excluded. We have previously refused to address an issue on appeal when no proffer is made after the family court excludes evidence. *See Zaragoza v. Zaragoza*, 309 S.C. 149, 153, 420 S.E.2d 516, 518 (Ct.App.1992) (an alleged erroneous exclusion of evidence is not a basis for establishing prejudice on appeal in the absence of an adequate proffer of evidence to the family court). In any event, the family court was presented with a plethora of testimony relating to how custody placement would affect Daughter, such that the exclusion of this testimony did not prejudice Mother.

### E. Grandmother's Testimony

Mother next contends that the family court abused its discretion in limiting the scope of her mother's (Grandmother) testimony at the final hearing. We disagree.

 During Grandmother's testimony, Mother's counsel asked Grandmother whether she "had an occasion to see [Daughter] after she's been on visitation with [Father] in this case." Father's counsel objected, stating that per Mother's discovery responses, Grandmother would only be testifying to Mother's characteristics as a parent and her specific observations of Father. The family court sustained Father's objection.

In response to Mother's argument on appeal, Father claims the introduction of Grandmother's observations regarding Daughter would create unfair surprise and prejudice. While we do not believe the introduction of Grandmother's testimony on this point would ultimately prejudice Father, Grandmother's testimony is admittedly outside the scope of testimony presented in Mother's discovery responses. Mother was free to supplement her discovery responses prior to the final hearing to enlarge the scope of her witnesses' testimony, and her failure to do so should not work to the detriment of Father. Furthermore, the family court permitted Grandmother to testify extensively about the parties' relationship and her

observations of Father and Mother, both individually and with Daughter. As a result, we do not view the family court's limitation on this small portion of Grandmother's testimony as prejudicial error.

### F. Mother's testimony

██ Mother lastly submits that the family court erred in limiting Mother's initial statement concerning her wishes for Daughter's custody placement. We disagree.

During the final hearing, Mother's counsel asked Mother, "What is your desire for this Court to order in regard to custody of [Daughter], primary custody of [Daughter]?" In response, Mother stated, "I pray that the Court awards me primary custody of [Daughter]." Mother then proceeded to explain why she was entitled to primary custody of Daughter. Father's counsel objected that her statements were not responsive to the question, and the family court sustained the objection. Mother briefly contends that the court's ruling demonstrates bias and prejudice; however, Mother fails to explain how she was prejudiced by the court's ruling. *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting that when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal). Regardless, we perceive no error or prejudice to Mother as the family court then immediately allowed Mother, at her counsel's prompting, to explain in detail to the court why she was seeking primary custody of Daughter.

### IV. Credibility Determinations

Mother summarily argues that the family court completely disregarded the probative value and credibility of Mother and her witnesses, which improperly influenced the family court's custody determination. We disagree.

██ Mother cites no authority for this argument, merely stating at the outset that she incorporates the arguments from all of the previous issues. *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting that when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on

appeal). Regardless, the family court's assessment of witness credibility and the weight it apportioned to certain witness's testimony was proper. The family court specifically stated in its final order, "Certain witnesses were found by the Court to be credible and compelling, while other witnesses were found by the Court not to be so." Although Mother claims that the family court completely disregarded the credibility of Mother and all of her witnesses, the only witness the family court explicitly found to be less credible was Mother. Based on Mother's conflicting testimony, which was highlighted in the family court's final order, the family court was well within its delegated authority to assign less weight to Mother's testimony in making its decision. *See Ball v. Ball*, 312 S.C. 31, 35–36, 430 S.E.2d 533, 536 (Ct.App.1993) (stating that the family court has the advantage of hearing all the testimony presented and thus is able to best weigh the testimony in making its decision). Thus, we find no abuse in the family court's exercise of discretion in resolving these credibility issues at the final hearing.

## VII. Ineffective Assistance of Trial Counsel

Mother claims her trial counsel's ineffective representation prevented her from having a meaningful final hearing in violation of her due process rights.[4] We disagree.

Mother attempts to improperly transform her dissatisfaction with her trial counsel's presentation of her case before the family court into a claim of legal error on the part of the family court. Any dissatisfaction she has with her trial counsel is not the proper subject of review on appeal from the family court's custody decision. *See generally Lanier v. Lanier*, 364 S.C. 211, 215, 612 S.E.2d 456, 458 (Ct.App.2005) (finding that the appellant has the burden to convince this Court that the *family court committed legal error* on appeal in a child custody case) (emphasis added).

---

4. In Mother's reply brief, she asserts for the first time that the family court also deprived Daughter of her due process rights. The reply brief is not the appropriate vehicle to raise new issues on appeal; thus, we decline to address this argument. *Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct.App.1989) ("An appellant may not use either oral argument or the reply brief as a vehicle to argue issues not argued in the appellant's brief.").

Furthermore, Mother's speculative claim that "adequate preparation of her case for trial may have avoided trial ... [and] most probably have brought about a different result" is insufficient to establish that she was deprived of a meaningful hearing in violation of her due process rights, particularly when she never raised this issue to the family court. *See Grant v. S.C. Coastal Council*, 319 S.C. 348, 356, 461 S.E.2d 388, 392 (1995) (finding appellant's argument that hearing below was conducted in such a way as to deprive him of his constitutional due process rights was never mentioned prior to his appeal and consequently was not preserved for review). In addition to Mother's failure to raise this issue below or to cite any authority to support her claim that the family court violated her due process rights, we note that the family court went to great lengths to provide Mother with an opportunity to adequately prepare her case as demonstrated by the court's willingness to grant Mother's multiple requests for continuances. Additionally, we find that the family court clearly afforded Mother and Father a meaningful, thorough, and fair hearing, as evidenced by the seven-day final hearing and ensuing thirty-two page final order. Therefore, Mother's argument on this issue is without merit.

## CONCLUSION

Based on the foregoing, the family court's decision is **AFFIRMED**.

HUFF and PIEPER, JJ., concur.